Nos. 08-55791, 08-55840, 08-55842

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

CHRISTINE WOLF,
*Plaintiff/Appellant/Cross-Appellee,*

v.

LORING WARD INTERNATIONAL, LTD., f/k/a ASSANTE NEWCO III, LTD., LORING WARD CAPITAL MANAGEMENT LTD., f/k/a ASSANTE GLOBAL ADVISORS, INC., LORING WARD, INC., f/k/a ASSANTE BUSINESS MANAGEMENT INC., ASSANTE CORPORATION, MARTIN WEINBERG and ROBERT PHILPOTT,
*Defendants/Appellees/Cross-Appellants*

On Appeal From The United States District Court For
The Central District Of California
No. CV 05-3535 PSG (RZX)
The Honorable Philip S. Gutierrez, District Judge

## PRINCIPAL AND RESPONSE BRIEF OF APPELLEES-CROSS-APPELLANTS LORING WARD, INC. AND ROBERT PHILPOTT AND APPELLEE MARTIN WEINBERG

Dale F. Kinsella (SBN 063370)
Kristen L. Spanier (SBN 181074)
Chad R. Fitzgerald (SBN 217551)
Kinsella Weitzman Iser Kump & Aldisert LLP
808 Wilshire Blvd., 3rd Floor

53289.00005/43178.2

Santa Monica, California 90401
Telephone   (310) 566-9800
Facsimile   (310) 566-9850
**Attorneys for Appellee/Cross-Appellant**
**Loring Ward, Inc.**

Michael L. Meeks (SBN 172000)
Robert M. Dato (SBN 110408)
Becky Hsiao (SBN 232361)
Buchalter Nemer
18400 Von Karman Avenue, Suite 800
Irvine, California 92612-0514
Telephone: (949) 760-1121
Facsimile: (949) 224-6210
**Attorneys for Appellee/Cross-Appellant**
**Robert Philpott**

Patricia L. Glaser (SBN 55668)
Joel N. Klevens (SBN 45446)
Diane K. Myint (SBN 235059)
Glaser, Weil, Fink, Jacobs & Shapiro, LLP
10250 Constellation Boulevard, 19th Floor
Los Angeles, California 90067
Telephone: (310) 553-3000
Facsimile: (310) 556-2920
**Attorneys for Appellee Martin Weinberg**

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Defendant/Appellee/Cross-Appellant Loring Ward, Inc. submits the following Corporate Disclosure Statement as required by Fed. R. App. Proc. 26.1:

Loring Ward Group, Inc. is the parent corporation of Loring Ward, Inc., and owns all of Loring Ward, Inc.'s stock.

DATED: February 9, 2009  KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP


By: /s/ Dale F. Kinsella
   Dale F. Kinsella
   Attorneys for Appellee/Cross-Appellant
   Loring Ward, Inc.

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.     INTRODUCTION ...................................................................... 1

II.   STATEMENT OF JURISDICTION .......................................... 3

III.  ISSUES PRESENTED ............................................................. 4

IV.  STATEMENT OF THE CASE................................................. 5

V.   STATEMENT OF FACTS ........................................................ 9

     A.   Background Facts ........................................................... 9

     B.   The Dissolution of the Wolfs' Marriage ......................... 10

         1.   The Wolfs' Negotiation and Execution of a Marital Settlement Agreement .......................................... 10

         2.   Plaintiff's Failed Challenges to the Wolfs' Marital Settlement Agreement .......................................... 11

     C.   Plaintiff Seeks Recovery From Her Former Business Managers ....... 16

         1.   Plaintiff Bases Her Claims On The Same Issues That Were Raised In The State Court Action ................................. 16

         2.   Plaintiffs' Withdrawal of Allegations in Response to Defendants' Rule 11 Letters ................................... 19

         3.   The Court's Issuance of the OSC........................... 20

         4.   Plaintiff's Need for a New Complaint to Save Her Case......... 20

         5.   Plaintiffs' Strategic Attempt to Use the OSC as Support for Her New Complaint ........................... 21

VI.  SUMMARY OF ARGUMENT .................................................23

VII. ARGUMENT (PLAINTIFF'S APPEAL) ...................................24

     A.   Standard of Review ........................................................24

i

B.   This Court Should Deny Plaintiff's Request to Amend Her
     Complaint to Correct the Deficient Jurisdictional Allegations ......... 24

C.   Plaintiff Has Not Established That the District Court Abused Its
     Discretion in Denying Her Rule 60(b) Motion ................................. 35

     1.   Given Plaintiff's Discussion of Section 1653 in Her Rule
          60(b) Motion and the District Court's Citation of the
          Section in Its Order, Plaintiff Cannot Establish that the
          District Court Failed to Consider the Section .......................... 35

     2.   Plaintiff Has Not Met Her Burden of Establishing The
          District Court Incorrectly Applied the Law in Denying
          Her Rule 60(b) Motion ........................................................... 37

          a.   Plaintiff's Claim of Error Should Be Limited to
               Error In Applying the Law of Mistake, Which
               Plaintiff Has Failed To Establish ................................. 37

          b.   Plaintiff Has Not Established That the District
               Court Misapplied the Law of Excusable Neglect .......... 43

          c.   Substantial Evidence Supports the Conclusion
               That the Pleading Allegations Concerning Plaintiff
               Were Not the Result of "Mistake." ............................... 47

     3.   The District Court Did Not Abuse Its Discretion in
          Denying the Rule 60(b) Motion, and Any Claimed Error
          Committed by the District Court Was Harmless .................... 49

          a.   Under *Pioneer,* Attorney Error Does Not Always
               Constitute Excusable Neglect ....................................... 49

          b.   Plaintiff's Failure to Properly Respond to the OSC
               Was Not Excusable Neglect .......................................... 53

     4.   Plaintiff's Claimed Harm Resulting From Her Attorney's
          Error Was Irrelevant To District Court's Analysis ................. 59

VIII.  ARGUMENT (CROSS-APPEAL) ............................................................. 62

A.   Standard Of Review ........................................................................ 62

B.    The District Court Erred In Denying Cross-Appellant's Summary Judgment Motion ................................................ 62

1.    Collateral Estoppel Under California Law ............................ 63

2.    The Relevant Issues in This Action Are "Identical" to Those That Were Actually Litigated in the State Court Action ...................................................................................... 65

3.    Because Plaintiff is Precluded From Re-Litigating the Above Issues, She Cannot Establish the Essential Elements of Her Claims ........................................................ 68

a.    Plaintiff is Precluded From Proving Reliance .............. 68

b.    Plaintiff is Precluded From Attempting to Prove Damages From the Alleged Concealment .................... 70

IX.    CONCLUSION ......................................................................... 71

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

*Allmerica Financial Life Ins. and Annuity Co. v. Llewellyn*,
   139 F.3d 664 (9th Cir. 1997) ..................................................... 49

*Anrig v. Ringsby United*,
   603 F.2d 1319 (9th Cir. 1978) ................................................... 31

*Aurecchione v. Schoolman Transp. Sys., Inc.*,
   426 F.3d 635 (2d Cir. 2005) ..................................................... 34

*Averbach v. Rival Manuf. Co.*,
   809 F.2d 1016 (3d Cir. 1987) .................................................... 37

*Balakian v. Balakian*,
   2008 WL 4539481 (E.D. Cal. October 10, 2008) ...................... 41

*Barrow Dev. Co. v. Fulton Ins. Co.*,
   418 F.2d 316 (9th Cir. 1969) ..................................................... 32

*Blue Ridge Ins Co. v. Stanewich*,
   142 F.3d 1145 (9th Cir. 1998) ................................................... 32

*Briones v. Riviera Hotel & Casino*,
   116 F.3d 379 (9th Cir. 1997) ..................................................... 57

*Comm. for Idaho's High Desert, Inc. v. Yost*,
   92 F.3d 814 (9th Cir. 1996) ....................................................... 49

*Daneshvar v. Graphic Technology, Inc.*,
   237 Fed.Appx. 309 (10th Cir. 2007) ................................... 25, 28

*Dower v. United Air Lines, Inc.*,
   329 F.2d 684 (9th Cir. 1964) ................................. 23, 25, 26, 27

*Draim v. Virtual Geosatellite Holdings, Inc.*,
   522 F.3d 452 (D.C. Cir. 2008) .................................................. 34

*Dubach v. Weitzel*,
   135 F.3d 590 (8th Cir. 1998) ............................................... 25, 28

*Easley v. Kirmsee*,
    382 F.3d 693 (7th Cir. 2004) ...................................................................50

*Engleson v. Burlington N. R.R. Co.*,
    972 F.2d 1038 (9th Cir. 1993) ...............................................................46

*Fid. Fed. Bank, FSB v. Durga Ma Corp.*,
    387 F.3d 1021 (9th Cir. 2004) ...............................................................40

*Fifty Associates v. Prudential Ins. Co., Inc.*,
    446 F.2d 1187 (9th Cir. 1970) ...............................................................32

*Forman v. Davis*,
    371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d. 222 (1962)....................................36

*Gila River Ranch, Inc. v. U.S.*,
    368 F.2d 354 (9th Cir. 1966) ..................................................................40

*Gilbert v. David*,
    235 U.S. 561, 35 S.Ct. 164, 59 L.Ed. 360 (1915).......................................47

*Gonzales v. Free Speech Coalition*,
    408 F.3d 613 (9th Cir. 2005) ..................................................................40

*Grocery Outlet Inc. v. Albertson's Inc.*,
    497 F.3d 949 (9th Cir. 2007) .....................................................23, 41, 42

*Harris v. American Legion*,
    162 F.Supp. 700 (S.D. Ind. 1958) .......................................................25, 30

*Hart v. Schering-Plough Corp.*,
    253 F.3d 272 (7th Cir. 2001) ..................................................................25

*Howard v. DeCordova*,
    177 U.S. 609, 20 S.Ct. 817, 44 L.Ed. 908 (1900).......................................33

*In re Rebel Rents, Inc.*,
    326 B.R. 791 (C.D. Cal. 2005) ..........................................................54, 57

*John Birch Society v. National Broadcasting Co.*,
    377 F.2d 194 (2d Cir. 1967) ...................................................25, 27, 29, 30

*Joy v. Hague*,
    175 F.2d 395 (1st Cir. 1949) ..................................................... 23, 25, 26, 27

*Kanter v. Warner-Lambert Co.*,
    265 F.3d 853 (9th Cir. 2001) .......................................................47

*Kantor v. Wellesley Galleries, Ltd.*,
    704 F.2d 1088 (9th Cir. 1983) .....................................................47

*Kingvision Pay-Per-View Ltd. v. Lake Alice Bar*,
    168 F.3d 347 (9th Cir. 1999) .......................................................40

*Kyle v. Campbell Soup Co.*,
    28 F.3d 928 (9th Cir. 1994) .......................................... 49, 50, 51, 55

*Latshaw v. Trainer Wortham & Co., Inc.*,
    452 F.3d 1097 (9th Cir. 2006) ..................................... 46, 58, 59

*LeBlanc v. Cleveland*,
    248 F.3d 95 (2d Cir. 2001) .................................................. 37, 48

*London v. Standard Oil Co.*,
    417 F.2d 820 (9th Cir. 1969) .......................................................32

*Luehrs v. Utah Home Fire Ins. Co.*,
    450 F.2d 452 (9th Cir. 1971) .......................................................32

*Mantin v. Broadcast Music, Inc.*,
    244 F.2d 204 (9th Cir. 1957) .......................................................32

*Marrese v. Am. Academy of Orthopaedic Surgeons*,
    470 U.S. 373, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985) ..............................63

*Mendez v. Knowles*,
    535 F.3d 973 (9th Cir. 2008) .......................................................57

*Miller v. Yokohama Tire Corp.*,
    358 F.3d 616 (9th Cir. 2004) .......................................................27

*Mills v. State of Maine*,
    118 F.3d 37 (1st Cir. 1997) .................................................. 25, 27

*Mir v. Fosburg,*
    646 F.2d 342 (9th Cir. 1980) ...................................................................27

*Molnar v. National Broadcasting Co.,*
    231 F.2d 684 (9th Cir. 1956) ...................................................................33

*Mutual Serv. Casualty Ins. Co. v. Country Life Ins. Co.,*
    859 F.2d 548 (7th Cir. 1988) ...................................................................34

*Naartex Consulting Corp. v. Watt,*
    722 F.2d 779 (D.C. Cir. 1983) ...........................................................25, 28

*Newman-Green, Inc. v. Alfonzo-Larrain,*
    490 U.S. 826, 109 S.Ct. 2218 (1989) ................................................25, 33

*Noah v. Bond Cold Storage,*
    408 F.3d 1043 (8th Cir. 2005) ...................................................................50

*Odishelidze v. Aetna Life & Casualty Co.,*
    853 F.2d 21 (1st Cir. 1988).................................................................34, 37

*Pena v. Seguros La Comercial S.A.,*
    770 F.2d 811 (9th Cir. 1985) .............................................................24, 35

*Pincay v. Andrews,*
    389 F.3d 853 (9th Cir. 2004) ............................................................passim

*Pioneer Investment Services Co. v. Brunswick Associates Ltd. Ptshp,*
    507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993) ........................passim

*Sac & Fox Nation of Oklahoma v. Cuomo,*
    193 F.3d 1162 (10th Cir. 1999) .........................................................25, 28

*Sarnoff v. American Home Products Corp.,*
    798 F.2d 1075 (7th Cir. 1986) ...............................................25, 27, 28, 31

*Schnabel v. Lui,*
    302 F.3d 1023 (9th Cir. 2002) ...................................................................24

*Snell v. Cleveland,*
    316 F.3d 822 (9th Cir. 2002) ...................................................................33

*Sparrow v. Heller,*
    116 F.3d 204 (7th Cir. 1997) ....................................................................50

*Speiser, Krause & Madole P.C. v. Ortiz,*
    271 F.3d 884 (9th Cir. 2001) ............................................................passim

*Swayne & Hoyt v. Barsch,*
    226 F. 581 (9th Cir. 1915) ........................................................................32

*Transit Cas. Co. v. Sec. Trust Co.,*
    441 F.2d 788 (5th Cir. 1971) ............................................................38, 40

*Twentieth Century Fox Film Corp. v. Goldwyn,*
    328 F.2d 190 (9th Cir. 1964) ......................................................41, 42, 43

*United States v. Bonnell,*
    180 F.2d 145 (9th Cir. 1950) ....................................................................41

*United States v. Hudspeth,*
    384 F.2d 683 (9th Cir. 1967) ....................................................................41

*Veeck v. Commodity Enters. Inc.,*
    487 F.2d 423 (9th Cir. 1973) ....................................................................32

*Ventura Packers, Inc. v. F/V Jeanine Kathleen,*
    305 F.3d 913 (9th Cir. 2002) ....................................................................62

*Whitmire v. Victus Ltd.,*
    212 F.3d 885 (5th Cir. 2000) ............................................................34, 36

## <u>STATE CASES</u>

*Bernhard v. Bank of America,*
    19 Cal.2d 807, 122 P.2d 892 (1942) ........................................................64

*Campbell v. Scripps Bank,*
    78 Cal.App.4th 1328, 93 Cal.Rptr.2d 635 (2000) ................................64, 71

*Castillo v. City of Los Angeles,*
    92 Cal.App.4th 477, 111 Cal.Rptr.2d 870 (2001) ......................................63

*Chicago Title Insurance Co. v. Superior Court*,
   174 Cal.App.3d 1142, 220 Cal.Rptr. 507 (1985).........................................68

*Frommhagen v. Board of Supervisors*,
   197 Cal.App.3d 1292, 243 Cal.Rptr. 390 (1987)..................................64, 66

*Guido v. Koopman*,
   1 Cal.App.4th 837, 2 Cal.Rptr.2d 437 (1991) .............................................69

*In re Marriage of Buckley*,
   133 Cal.App.3d 927, 184 Cal.Rptr. 290 (1982) .........................................64

*Lucido v. Superior Court*,
   51 Cal.3d 335, 272 Cal.Rptr. 767 (1990) .............................................63, 65

*Tushinsky v. Arnold*,
   195 Cal.App.3d 666, 241 Cal.Rptr. 103 (1987) .........................................71

*Wodicka v. Wodicka*,
   17 Cal.3d 181, 130 Cal.Rptr. 515 (1976) ...................................................64

## **FEDERAL STATUTES**

28 U.S.C. § 1291 ...........................................................................................3, 4

28 U.S.C. § 1332 .....................................................................................3, 16, 20

28 U.S.C. § 1653 ..................................................................................... passim

## **STATE STATUTES**

California Code of Civil Procedure § 664.6 ...........................................12

## **RULES**

Federal Rules of Civil Procedure, Rule 11 .........................................2, 19

Federal Rule of Civil Procedure, Rule 15 .......................................27, 36

Federal Rule of Civil Procedure, Rule 60(b)................................. passim

## I.    <u>INTRODUCTION</u>

In her Opening Brief, Plaintiff attempts to paint herself as a victim wronged by the district court who will suffer irreparable injury if the Ninth Circuit does not reverse. Nothing could be further from the truth. The only people to blame for Plaintiff's current predicament are Plaintiff and her counsel. Since the inception of this action, Plaintiff and her counsel have been acting without regard for federal law and procedure, determined to extract millions of dollars from defendants to compensate Plaintiff for what a Santa Barbara County Superior Court Judge termed "buyer's remorse," after reaching a martial settlement agreement with her former husband.

This action arises out of a dispute between Plaintiff and her ex-husband Richard Wolf over a 2003 marital property settlement agreement. After months of negotiations and the parties' execution of the settlement agreement, Plaintiff sought to renege by twice arguing to the Santa Barbara County Superior Court that Mr. Wolf and defendants failed to disclose, among other things, that Mr. Wolf's future income would significantly increase as a result of re-negotiations of his contracts for the *Law & Order* television series and its progeny. Both times, the state court rejected Plaintiff's argument, and the California Court of Appeal affirmed.

Having failed on three different occasions to undo her agreements with Mr. Wolf, Plaintiff embarked on a new strategy, asserting the same claims in a new forum against the current defendants. However, after Plaintiff's deposition in February 2008, it became clear that Plaintiff had no evidence supporting her allegations that any of the defendants (or Mr. Wolf) failed to disclose anticipated future income from the *Law & Order* series. As a result, two of the defendants demanded that Plaintiff withdraw her claims pursuant to Rule 11 of the Federal Rules of Civil Procedure.

Faced with possible Rule 11 sanctions, Plaintiff agreed to withdraw a substantial number of her allegations, including those regarding defendants' purported failure to disclose the value of earnings relating to *Law & Order*. Rather than simply amend the complaint to delete the unsupported allegations, however, Plaintiff stalled in providing defendants with her proposed amended complaint, suggesting that the complaint would also include "new" allegations.

When the district court issued its Order to Show Cause Regarding Subject Matter, which is at the heart of this appeal, Plaintiff responded by stating that she was concurrently seeking leave to file an amended Complaint. The proposed complaint contained a multitude of new theories, claims and allegations against defendants but failed to rectify the jurisdictional defects specifically identified in

the OSC. The district court therefore dismissed the action and denied Plaintiff's motion for relief under Rule 60(b). Plaintiff appealed.

As discussed in detail below, Plaintiff has not and cannot establish that the district court abused its discretion in denying Plaintiff relief from the dismissal. Plaintiff had the opportunity to cure the jurisdictional defects below and failed to do so. Given the facts and circumstances surrounding that failure, her mistake is not excusable, and the district court did not err in reaching that conclusion. Moreover, even if this Court reversed the dismissal, Plaintiff should not be allowed to continue her action. Given the rulings against Plaintiff in the Santa Barbara Superior Court, Plaintiff's claims are barred by the doctrine of collateral estoppel and the district court erred in denying defendants summary judgment based on that defense.

## II.   **<u>STATEMENT OF JURISDICTION</u>**

<u>APPEAL</u>:  Plaintiff claims that jurisdiction in the district court was proper based on diversity of citizenship, 28 U.S.C. § 1332. The district court's order dismissing Plaintiff's claims for lack of subject matter jurisdiction and order denying Plaintiff's motion to re-open the action pursuant to Federal Rule of Civil Procedure Rule 60(b) are appealable pursuant to 28 U.S.C. § 1291. Plaintiff's Notice of Appeal was timely filed on May 5, 2008. ER 10.

CROSS-APPEALS: The district court's order denying Defendants' Motion for Summary Judgment is an appealable order pursuant to 28 U.S.C. § 1291. The Notices of Cross-Appeal filed by defendants Loring Ward, Inc. and Robert Philpott were timely filed on May 19, 2008. Supplemental Excerpts of Record ("SER") 8-36.

## III.   ISSUES PRESENTED

APPEAL:

1.      Whether this Court should allow Plaintiff to amend her complaint pursuant to 28 U.S.C. § 1653 to correct her defective jurisdictional allegations where she was previously provided the opportunity to amend and failed to take advantage of that opportunity.

2.      Whether the district court abused its discretion in denying Plaintiff's motion for relief on the grounds of mistake pursuant to Rule 60(b)(1) where:

(a)      Plaintiff failed to offer any reasonable justification for the mistake, and the facts and circumstances surrounding her mistake demonstrated that she was not entitled to relief under Rule 60(b)(1).

(b)      Plaintiff relied exclusively on the law of mistake thereby waiving any claim of error involving other grounds under Rule 60(b)(1), including the law of excusable neglect.

(c)     Substantial evidence supports the conclusion that Plaintiff's allegations concerning citizenship were not the result of mistake.

CROSS-APPEALS:

3.     Whether the district court should have granted a motion for summary judgment based on collateral estoppel, where the record established that the issues which give rise to Plaintiff's claims in this action were already resolved against her in the dissolution proceeding between her and her former husband and that, given the prior adjudication, Plaintiff cannot prove essential elements of her claims.

## IV.     STATEMENT OF THE CASE

Plaintiff filed this action on May 11, 2005.  ER 297 (Docket No. 1).  Nine days later, Plaintiff filed a First Amended Complaint (the "FAC"), which Plaintiff contends corrected "certain technical errors in the original complaint."  ER 270 (Docket No. 7); Brief of Plaintiff-Appellant Christine Wolf ("AOB") at 6.  In her FAC, Plaintiff alleges claims against her former business managers and various other entities for breach of fiduciary duty, fraud, negligent misrepresentation, negligence and breach of contract arising out of Defendants' limited involvement in a marital dissolution mediation between Plaintiff and her former husband, Richard "Dick" Wolf, which resulted in the parties' execution of a martial settlement agreement.  ER 270-289.  Plaintiff alleged that she was a "resident" of

Connecticut but alleged that defendants Martin Weinberg and Robert Philpott were "domiciled" in Manitoba and California, respectively. ER 271-72.

In July 2005, defendants Loring Ward, Inc. ("Loring Ward") and Philpott – the only two defendants who had been served at the time – filed a motion to stay the action pending resolution of an appeal in the state dissolution proceeding between Plaintiff and Mr. Wolf over the validity of the marital settlement agreement. Defendants argued that a stay was warranted because once the judgment in the dissolution proceeding was final, the doctrine of collateral estoppel would resolve most, if not all, of the issues underlying Plaintiff's claims in this action. ER 299 (Docket No. 37). On November 10, 2005, the district court stayed the action. ER 301-302 (Docket No. 45).

In early 2006, the California Court of Appeal affirmed the judgment in the dissolution proceeding, upholding the validity of the Wolfs' martial settlement agreement. SER 655-69, 238 at ¶ 31. Thereafter, the district court lifted the stay of this action for the limited purpose of allowing Loring Ward and Philpott to file a motion for summary judgment on collateral estoppel grounds.[1] ER 303 (Docket No. 58). They filed their motion for summary judgment (the "Summary Judgment Motion") in September 2006. ER 303 (Docket No. 69). On December 4, 2006, the district court entered an order denying the motion. SER 1-7.

---

[1] Weinberg was not a party to the motion because, at the time it was filed, he had not yet appeared in the action.

On March 3, 2008, three months before the June 8, 2008 trial date (ER 309 - Docket No. 115), the district court issued a detailed "Order to Show Cause Re Dismissal For Lack of Subject Matter Jurisdiction" (the "OSC"). The OSC specifically identified defects in Plaintiffs' attempt to plead diversity jurisdiction and gave the Plaintiff until March 17, 2008 to show cause in writing why the action should not be dismissed. ER 6-9. On March 17, 2008, Plaintiff filed a "Notice of Response to OSC," which informed the court that she was responding to the OSC by seeking leave to file a Second Amended Complaint, which she claimed corrected "the jurisdictional deficiencies" outlined in the OSC. ER 184-187.

That same day, Plaintiff also filed a Motion for Leave to File a Second Amended Complaint. ER 333 (Docket No. 339). Despite the fact that the deadline for amending pleadings had passed almost six months earlier, Plaintiff's Motion for Leave sought to add numerous new allegations, theories and claims against Defendants in addition to "fixing" the jurisdictional defects. *Id.* Moreover, both Plaintiff's Notice of Response and proposed Second Amended Complaint still contained one of the deficiencies noted in the OSC by repeating the allegation that Plaintiff was a "resident" rather than a "citizen" of Connecticut. ER 185 ln 16-17; ER 333 (Docket No. 332).

On April 4, 2008, the district court dismissed the action for lack of subject matter jurisdiction based on Plaintiff's failure to correct the jurisdictional defect. ER 4-5. On April 7, 2008, Plaintiff filed a motion to re-open the case and for permission to file a motion to amend the defective allegations (the "Rule 60(b) Motion"). Plaintiff argued that she had made a <u>mistake</u> in responding to the OSC and that she was entitled to relief from her <u>mistake</u> under Federal Rule of Civil Procedure 60(b)(1). ER 57-84. Plaintiff specifically argued that her conduct did not constitute "neglect." ER 73 n.10. In a three page written order, the district court denied the motion. ER 1-3.

Plaintiff appealed. ER 10-26. Loring Ward and Philpott filed cross-appeals which, in the event the Ninth Circuit is inclined to reverse the district court's orders, seek dismissal of the action with prejudice based on the district court's error in denying the Summary Judgment Motion.[2] SER 8-36.

On June 3, 2008, Plaintiff filed a Motion to Amend Jurisdictional Allegations with this Court, pursuant to which Plaintiff asked the Court to amend her allegations *nunc pro tunc* pursuant to 28 U.S.C. § 1653 and summarily reverse and remand the case to the district court. Defendants opposed the motion, arguing,

---

[2] Weinberg is not a party to the cross-appeals because he was not a party to the Summary Judgment Motion. However, because Plaintiff asserts identical claims against each of the named defendants, to the extent this Court reverses the order denying the Summary Judgment Motion, the resulting judgment should apply with equal force to all named defendants, including Weinberg.

among other things, that Section 1653 was no longer available to Plaintiff because the district court had already provided Plaintiff with the opportunity to amend, and she had failed to do so. On October 21, 2008, the Court denied Plaintiff's Motion without prejudice to raising the issue again in her opening brief.

In July 2008, Plaintiff filed a complaint in the Los Angeles County Superior Court identical to her proposed SAC in this action. Request of Appellees-Cross-Appellants Loring Ward, Inc. and Robert Philpott and Appellee Martin Weinberg For Judicial Notice ("RJN"), Ex. A. Defendant Martin Weinberg removed the complaint to the United States District Court for the Central District of California, and the district court assigned the case to the Honorable Philip S. Gutierrez, the judge who presided over this action at the time of its dismissal. Plaintiff immediately dismissed the complaint. RJN, Ex. B.

## V. STATEMENT OF FACTS

### A. Background Facts

In October 1994, Philpott began acting as business manager and certified public accountant for Plaintiff and her then husband Richard "Dick" Wolf. SER 216, ¶ 15. Mr. Wolf is the creator and executive producer of the television series *Law & Order, Law & Order: Criminal Intent* and *Law & Order: SVU (Special Victims Unit.).* SER 1266 at ¶ 3, 235 at ¶ 6. In 1998, Philpott's firm merged with

Assante Business Management Group, which later became known as Loring Ward. SER 288-89 at ¶¶ 1-2, 236 at ¶ 7.

### B.     The Dissolution of the Wolfs' Marriage

In 2002, Plaintiff decided to end her marriage to Mr. Wolf.  SER 216-17 at ¶16.  Plaintiff contacted defendant Martin Weinberg ("Weinberg"), the then chairman of defendant Assante Corporation (which operated Assante Business Management Group), and asked if he would consider assisting the Wolfs in mediating the financial issues relating to their dissolution, which Mr. Weinberg agreed to do.  SER 217 at ¶¶ 16-17.

### 1.     The Wolfs' Negotiation and Execution of a Marital Settlement Agreement

In the fall of 2002, Mr. Wolf's dissolution attorney, Joseph Kibre, Esq. ("Kibre"), hired the accounting firm of Cohen, Miskei & Mowrey ("CMM") to perform forensic accounting work for Mr. Wolf, which Assante then used in preparing a financial analysis and "term sheet" for the Wolfs.  SER 218 at ¶ 20.  In October 2002, Weinberg sent a draft "term sheet" to Kibre for review and re-drafting.  SER 221 at ¶ 24.  In November 2002, Weinberg sent the proposed "term sheet" to Plaintiff.  *Id.*

On February 11, 2003, Mr. Wolf filed a Petition for Legal Separation in the Santa Barbara County Superior Court entitled *In re Marriage of Richard Wolf, Petitioner, and Christine Wolf, Respondent*, Case No. 01111700 (the "State Court

Action"). SER 247-251, 235 at ¶ 1. In March 2003, after months of negotiation between Kibre and Plaintiff's dissolution counsel William Beslow, Esq. ("Beslow"), the Wolfs each executed a short form agreement (titled Memorandum of Agreement and Addendum ("MOA")) which documented the terms for the division of marital property and dissolution of the Wolfs' marriage. SER 223 at ¶ 27, 274-76 at ¶¶ 9-22, 856-76, 1270-72 at ¶¶ 16-20, 235 at ¶¶ 4-6.

The Wolfs' respective counsel then spent additional months in negotiations to transform the MOA into a long-form Marital Settlement Agreement ("MSA"), which Plaintiff and Mr. Wolf signed on August 13, 2003 and September 17, 2003, respectively. SER 223 at ¶ 28, 225 at ¶ 31. The MSA provided Plaintiff with, among other things: $17,500,000 cash tax-free; spousal support of not more than $2,000,000 nor less than $500,000 for eight years; and the Wolfs' Maine residence with net equity of approximately $2,200,000. SER 1411-44, 236 at ¶ 16.

### 2. Plaintiff's Failed Challenges to the Wolfs' Marital Settlement Agreement

On September 5, 2003, Plaintiff learned of an article published the day before in the *Los Angeles Times* regarding Mr. Wolf's purported negotiations with NBC for a deal relating to the *Law & Order* series. SER 224 ¶ 29. On September 16, 2003, Beslow left a voicemail for Kibre stating that Plaintiff was upset over the *Times* article and was "'concerned with Assante representing her . . . . She's

concerned that Assante made representations, now it turns out probably based upon inadequate documentation.'"  SER 280 at ¶ 35, 1200, 235 at ¶¶ 4-5.

On September 18, 2003, Kibre sent Beslow a letter stating that "[n]o misrepresentations were made by [Mr. Wolf] or any of his representatives to anyone representing or advising [Plaintiff], nor was any material information withheld in connection with information provided to [Plaintiff's] representatives, including you."  Kibre closed his letter by stating that unless Plaintiff agreed to enter the judgment by stipulation, Mr. Wolf would commence proceedings to enforce the MSA as a judgment under California Code of Civil Procedure § 664.6. SER 280 at ¶ 36, 1202-04, 235 at ¶¶ 4-5.  Plaintiff refused.  Consequently, on February 6, 2004, Mr. Wolf filed a motion to enforce the MSA in the State Court Action.  SER 253-69, 235 at ¶¶ 2-3.

On March 14, 2004, Plaintiff filed her opposition to Mr. Wolf's motion wherein she argued that the MSA was <u>unenforceable because her consent had been procured by fraud</u>.  SER 1276-1292, 236 at ¶ 10.  Specifically, Plaintiff claimed in her opposition that:

(1)     Mr. Wolf <u>and Assante</u>[3] failed to disclose that the financial analysis used in negotiating the terms of the MSA, which had been provided to Plaintiff by

---

[3] As mentioned above, Loring Ward was previously known as Assante Business Management, Inc.

Assante, was in fact prepared by CMM, the forensic accounting firm retained by

Mr. Wolf's counsel (SER 1281, 1289, 1294 at ¶ 3, 1306-07 at ¶ 2, 236 at ¶ 10); and

(2)     Mr. Wolf <u>and Assante</u> failed to disclose and/or concealed the value of

community assets during the negotiation of the MSA by failing to advise Plaintiff

that Mr. Wolf was renegotiating, or was going to be renegotiating, his profit

participation in the *Law & Order* series and its progeny, and that the re-

negotiations were likely to result in substantial future revenues payable to Mr.

Wolf (SER 1279-80, 1283-84, 1288, 1295-96, 1308-09, 1314-15, 236 at ¶ 10).

Plaintiff supported her opposition with her own declaration and one from her

counsel Beslow.  Both Plaintiff and Beslow claimed in their declarations that if

they had known that the financial analysis had been prepared by CMM (rather than

independently by Assante as Plaintiff believed), Plaintiff "would have questioned

the report and even, if necessary, retained an expert to analyze the report."  SER

1294 at ¶ 3, 1306-07 at ¶ 2, 236 at ¶ 10.  Beslow further attested that if he had

known the report had been prepared by CMM and was not independent, he "would

have recommended to [Plaintiff] that she engage a forensic accounting firm to

review the Assante report and the supporting documents."  SER 1307 at ¶ 2, 236 at

¶ 10.

In March 2004, Santa Barbara Superior Court Judge Thomas P. Anderle

granted Mr. Wolf's Motion to Enforce the MSA.  SER 350-52, 236 at ¶ 15.  The

Court stated that it had "examined the facts and declarations to determine if there is any justification for a 'set aside'" and found none. SER 352, 236 at ¶ 15. The Court held that "[t]here is nothing in [the] record that demonstrates to the court Christine [Wolf] has any defense to this matter other than buyers [sic] remorse or a change of heart. She was fully represented by competent and thoughtful counsel." SER 351, 236 at ¶ 15. The court further found that "[t]his was a written lengthy and complex contract, negotiated over considerable time, signed by two sophisticated clients with able and competent counsel." SER 352, 236 at ¶ 15.

In granting Mr. Wolf's Motion, the Superior Court also made a number of relevant findings. <u>First</u>, the Court rejected Plaintiff's claim that she suffered harm because she was unaware that Mr. Wolf's accountants (CMM) played a role in preparing the financial analyses presented to her by Assante during the negotiations of the MSA:

> There seems to be no real argument with the fact that the accounting [Plaintiff] and her counsel complain of was either inaccurate or incorrect. The court recognizes that they complain the information they were given was correct, but from an unexpected source. This does not constitute concealment or duress.

SER 351-52, 236 at ¶ 15.

<u>Second</u>, the court expressly rejected Plaintiff's claim that she had been misled or harmed by lack of information concerning Mr. Wolf's future revenues on the *Law & Order* series:

> [Plaintiff] knew about the issues of goodwill and future profits. Both of these issues are well know [sic] to divorce lawyers and are subject to considerable discussion in every dissolution such as this. Neither is readily or easily determinable. Both are elusive. Every dissolution lawyer is aware of the problems dealing with such concepts. <u>She cannot claim either fraud or concealment under these facts. . . . Here there was no failure to disclose an asset.</u> Here there was no one who was unrepresented. . . .[¶] Dissolution lawyers know the requirements of having to make reasonable inquiry and the reasons for the rule.

SER 351 (emphasis added), 236 at ¶ 15.

After judgment was entered, Plaintiff filed a motion to set aside the judgment, repeating the same two arguments made in her opposition to Mr. Wolf's Motion to Enforce the MSA. SER 356, 360-62, 369-70, 375-77 at ¶¶ 3-8, 236-37 at ¶ 18. In addition, Plaintiff claimed that Kibre (Mr. Wolf's attorney) worked on the term sheet presented to Plaintiff purportedly on behalf of Assante prior to Assante's sending her the "term sheet." SER 377 at ¶ 8, 426-27 at ¶ 23, 236-37 at ¶ 18.

On August 3, 2004, Superior Court Judge Anderle issued an order denying Plaintiff's motion. SER 493-98, 237 at ¶¶ 23-24. Plaintiff appealed from that order. SER 527-29, 237 at ¶ 27. After full briefing by the parties, the California Court of Appeal affirmed the trial court's rulings in January 2006. SER 654-69, 238 at ¶ 31. With respect to the claim that she was misled as to the future revenues from the *Law & Order* series, the Court of Appeal found:

[Plaintiff] fail[ed] to present any admissible evidence indicating that the negotiations regarding the [value for goodwill] were not properly informed.

\*　　\*　　\*

Goodwill value, by contrast, is highly intangible and difficult to quantify, and [Plaintiff] fails to demonstrate that [Mr. Wolf] intentionally withheld information that would have been relevant to that determination.

SER 665-66, 238 at ¶ 31.

The Court of Appeal also affirmed the Superior Court's findings that neither CMM's nor Kibre's conduct constituted "concealment."  SER 666-67, 236 at ¶ 31.

## C.　**Plaintiff Seeks Recovery From Her Former Business Managers**

In May 2005, while her appeal in the State Court Action was pending, Plaintiff filed this action against her former business managers and other entities. ER 270.  Plaintiff alleged that the district court had "subject matter jurisdiction over this action based on diversity of citizenship, 28 U.S.C. § 1332 . . ."  ER 272 ¶9.  In support of her diversity allegations, Plaintiff alleged that she was "an individual who is a <u>resident</u> of Greenwich, Connecticut."  ER 271 ¶1, emphasis added.

### 1.　**Plaintiff Bases Her Claims On The Same Issues That Were Raised In The State Court Action**

The "Preliminary Statement" in paragraph 12 of Plaintiff's operative (first amended) complaint identifies three issues (identical to those litigated in the State Court Action) upon which she bases each of her claims:

Issue No. 1:  Assante allegedly "concealed from and/or failed to disclose to [Plaintiff] until after she signed the [MSA], the fact that enormous future revenues would be paid to Mr. Wolf from profit participations in the broadcast and syndication of the television show Law & Order and its progeny" (ER 273);

Issue No. 2:  Assante allegedly failed to advise Plaintiff that Mr. Wolf's accountants (CMM) were involved in preparing the financial analysis submitted to her during the negotiations – *i.e.*, Assante "endorsed to [Plaintiff] financial data analyses generated by an accounting firm [CMM] retained by Mr. Wolf's attorney" (*id*); and

Issue No. 3:  Assante allegedly "allowed Mr. Wolf's attorney to preview and revise their purportedly objective and balanced recommendations for the marital property settlement [*i.e.*, the "term sheet" prepared by Martin Weinberg] prior to submitting the same to [Plaintiff], and then submitted the revised recommendation to [Plaintiff] as the end-product of Defendants' own analysis and research"  (*id*).

Based upon Issues Nos. 1-3, Plaintiff alleged in her five causes of action that Defendants:

(a) breached fiduciary duties owed to her by "allow[ing] Mr. Wolf's attorney secretly to review and revise their supposedly neutral recommended terms for the marital settlement before providing [Plaintiff] with those terms …[and by] fail[ing] to adequately investigate the Wolfs' community estate, and/or affirmatively

conceal[ing] material facts from [Plaintiff] until after she signed the MSA, as detailed above" (ER 284);

(b) committed fraud when they "proffered to [Plaintiff] a fraudulent 'term sheet' in November 2002," which "was not an objective, informed, accurate, or reliable assessment performed by Weinberg, Assante and Assante Business Management; rather, it was substantially the handiwork of Mr. Wolf, his attorney, and CMM, a forensic accounting firm hired by Mr. Wolf's attorney" (ER 285-86) ;

(c) made negligent misrepresentations to Plaintiff in connection with "their representations discussed above" by failing to "remain neutral and to inform [Plaintiff] of all relevant financial information … [and by failing] to use reasonable care to determine the truthfulness of their communications to [Plaintiff]" (ER 287);

(d) acted negligently because "[t]hey did not use reasonable care when advising [Plaintiff] and proposing marital settlement terms" and "[t]hey failed to remain neutral" (ER 288); and

(e) breached their contract with Plaintiff "to prepare a detailed analysis of Mr. and Ms. Wolfs' financial condition and, based thereon, to prepare an objective and unbiased recommendation (or 'term sheet') for their marital property settlement" (ER 288-89).

## 2. Plaintiffs' Withdrawal of Allegations in Response to Defendants' Rule 11 Letters

In mid-February 2008, during three days of deposition, Plaintiff admitted that she had never possessed any evidence to support key allegations in her complaint. SER 54 at ¶ 25, 57-91. Counsel for Defendants then sent letters to Plaintiff's lawyers, demanding that Plaintiff dismiss her unsupported claims and citing Rule 11 of the Federal Rules of Civil Procedure. SER 94 at ¶ 9, 100-08. In response, Plaintiff agreed to withdraw, among other allegations, the allegation from paragraph 12 of her complaint, described above as Issue No. 1, that Defendants

> concealed from and/or failed to disclose to [Plaintiff] until after she signed the [MSA], the fact that enormous future revenues would be paid to Mr. Wolf from profit participations in the broadcast and syndication of the television show Law & Order and its progeny.

SER 116B, 94 at ¶ 10. Plaintiff explained that, given this withdrawal, her claims would now be based on the two remaining issues identified in Paragraph 12 of her complaint (Issues Nos. 2 and 3 above):

> The proposed SAC will, consistent with the evidence Plaintiff currently has in hand, state the same causes of action as those set forth in the FAC, but will do so based on Mr. Philpott's and Mr. Weinberg's having deliberately concealed the involvement of Joseph Kibre and Cohen, Miskei & Mowrey ("CMM") in a process, and in the preparation of materials, that were falsely represented by Mr. Weinberg to be neutral and fair.

SER 116C, 94 at ¶ 10.

### 3.    The Court's Issuance of the OSC

On March 3, 2008, the district court issued an OSC to Plaintiff, stating it

may lack jurisdiction because:

> Jurisdiction is asserted on the basis of diversity jurisdiction pursuant
> to 28 U.S.C. § 1332, but <u>the pleadings set forth the residence, rather
> than the citizenship, of some of the parties</u>.  Diversity is based on
> citizenship.
>
> <u>and</u>
>
> Jurisdiction is asserted on the basis of diversity jurisdiction pursuant
> to 28 U.S.C. § 1332.  Some of the parties are corporations.  The
> complaint is deficient because: [X] the complaint does not state both
> the respective state(s) of incorporation and principal place of business.
> 28 U.S.C. § 1332(c) . . .

ER 6-7, emphasis added.

### 4.    Plaintiff's Need for a New Complaint to Save Her Case

On March 12, 2008, Plaintiff's lawyers sent Defendants' counsel a proposed

Second Amended Complaint ("SAC") that, despite the representations made in her

counsel's February 29 letter, <u>substantially expanded</u> the allegations and legal

theories in the extant FAC, and requested that Defendants stipulate to the filing of

the SAC within two days even though the deadline for amending pleadings had

long passed.  SER 39 at ¶ 4.  Loring Ward offered to stipulate that the FAC could

be amended by simply deleting the unsupported allegations that Plaintiff had

agreed to withdraw, but Plaintiff never responded to Loring Ward's offer.  *Id.*

**5.** **Plaintiffs' Strategic Attempt to Use the OSC as Support for Her New Complaint**

On March 17, 2008, rather than simply seek to amend the operative complaint to correct the jurisdictional defects, Plaintiff filed her "Notice of Response to OSC," which directed the district court to her concurrently filed Motion for Leave to File a Second Amended Complaint. ER 185. In her Motion for Leave, Plaintiff represented that the proposed SAC was necessary, among other reasons, "to add factual allegations regarding the principal place of business of corporate defendant Loring Ward, Inc." in response to the Court's March 3, 2008 Order to Show Cause. ER 333 (Docket No. 332). Despite the fact that the OSC expressly advised Plaintiff that she also had failed to allege diversity because her "pleadings set forth the residence, rather than the citizenship, of some of the parties," Plaintiff's "Notice of Response to OSC" and proposed SAC still alleged that Plaintiff was a "resident" rather than a "citizen" of Connecticut. ER 185 ¶1; ER 333 (Docket No. 332).

In addition, the proposed SAC was replete with a multitude of new allegations, theories and claims against Defendants, despite the fact that the deadline for amending pleadings had past nearly six months earlier. ER 333 (Docket No. 332). Defendants opposed the Motion for Leave on March 24, 2008. ER 334-35.

21

On April 4, 2008, before the Motion for Leave was heard, the district court dismissed the action for lack of subject matter jurisdiction.[4]  ER 4.  The district court held that, although it "provided Plaintiff with an opportunity to establish that jurisdiction is proper," she again "merely alleges that she 'is an individual who is a resident of Greenwich, Connecticut.'"  ER 4.  The Court also observed that the proposed second amended complaint repeated that allegation.  ER 4.

Plaintiff then filed a motion to re-open the case, claiming that the failure to adequately respond to the OSC was an excusable mistake under rule 60(b) of the Federal Rules of Civil Procedure.  The district court denied the motion, finding no excusable mistake:  "In response to the OSC, Plaintiff mistakenly failed to address the problems with her jurisdictional allegations. . . .  [A]ttorney error does not qualify as excusable mistake or neglect to justify relief under FRCP 60(b)(1)."  ER 3.  The Court also noted that its OSC had "provided significant detail regarding the problems with Plaintiff's jurisdictional allegations," even though it could have dismissed Plaintiff's case *sua sponte* without issuing an OSC.  ER 3, fn. 1.  The

---

[4] At that time, motions for summary judgment filed by Defendants were pending, which argued, among other things, that the mediation privilege set forth in California Evidence Code § 1115 barred Plaintiff from proving her claims.  ER 338-343.  The motions were based in part on a February 26, 2008 ruling by Magistrate Judge Ralph Zarefsky which held that the proceeding between Plaintiff and Mr. Wolf, during which all of Defendants' alleged wrongful conduct occurred, was a mediation at which Weinberg acted as a mediator, and that documents prepared in connection with that proceeding were protected from disclosure by the mediation privilege.  SER 38 at ¶ 2, 41-44.

Court also noted that, "[w]hile 28 U.S.C. § 1653 states that '[d]efective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts,' the statute does not place a duty on the Court to explain to Plaintiff the correct way to allege diversity jurisdiction in a particular case." *Id.*

## VI.   SUMMARY OF ARGUMENT

Plaintiff cannot amend her jurisdictional allegations on appeal because she was given that opportunity below and failed to do so. *See e.g., Joy v. Hague*, 175 F.2d 395, 396-97 (1st Cir. 1949); *Dower v. United Air Lines, Inc.*, 329 F.2d 684, 685 (9th Cir. 1964). Plaintiff's Section 1653 cases support this rule as each involves a situation where either the jurisdictional defect was raised for the first time on appeal or where the district court had not provided the party seeking amendment with the opportunity to amend.

The district court did not abuse its discretion in denying Plaintiff's Rule 60(b) motion. That motion was premised on the "mistake" prong of Rule 60(b)(1), not the "excusable neglect" prong of Section 60(b)(1), which Plaintiff argued was a separate and distinct ground inapplicable to her situation. Plaintiff cannot now change course on appeal and argue that the district court erred by failing to correctly apply the law of excusable neglect. *See e.g., Grocery Outlet Inc. v. Albertson's Inc.*, 497 F.3d 949, 951 (9th Cir. 2007). And in any event, applying the law of mistake would not yield a different result. The only reason offered by

Plaintiff for her "error" – that her counsel failed to properly read the OSC – "is one of the least compelling excuses that can be offered." *Pincay v. Andrews*, 389 F.3d 853, 859 (9th Cir. 2004).

The judgment can also be affirmed on the ground that the district court should have granted defendants' summary judgment motion based on collateral estoppel. Plaintiff cannot establish that she reasonably relied upon Defendants' alleged non-disclosures or that she suffered any resulting damage because these issues were already adjudicated against her in the prior State Court Action.

## VII. ARGUMENT (PLAINTIFF'S APPEAL)

### A. Standard of Review

The question of whether subject matter jurisdiction existed at the time the district court dismissed the action is reviewed *de novo*. *Schnabel v. Lui*, 302 F.3d 1023, 1029 (9th Cir. 2002). The district court's decision to deny Plaintiff's Rule 60(b) Motion, however, is reviewed under the abuse of discretion standard. *Pena v. Seguros La Comercial S.A.*, 770 F.2d 811, 814 (9th Cir. 1985).

### B. This Court Should Deny Plaintiff's Request to Amend Her Complaint to Correct the Deficient Jurisdictional Allegations

In seeking amendment pursuant to Section 1653, Plaintiff overstates the scope and applicability of the statute. Section 1653 does authorize appellate courts

to amend defective jurisdictional allegations when jurisdiction clearly exists[5] and

thereby can provide relief from attorney error.[6]  However, Section 1653 does not

"mandate" amendment where, as here, a plaintiff has been provided the

opportunity to correct defective jurisdictional allegations but has failed to do so.

*See e.g., Joy*, 175 F.2d at 396-97; *Dower,* 329 F.2d at 685; *John Birch Society v.*

*National Broadcasting Co.*, 377 F.2d 194, 198-99 (2d Cir. 1967); *Sarnoff v.*

*American Home Products Corp.*, 798 F.2d 1075, 1079 (7th Cir. 1986), *superseded*

*on other grounds as recognized in Hart v. Schering-Plough Corp.*, 253 F.3d 272,

274 (7th Cir. 2001); *Daneshvar v. Graphic Technology, Inc.*, 237 Fed.Appx. 309,

315 (10th Cir. 2007); *Mills v. State of Maine,* 118 F.3d 37, 53 (1st Cir. 1997);

*Dubach v. Weitzel*, 135 F.3d 590, 593 (8th Cir. 1998); *Harris v. American Legion*,

162 F.Supp. 700, 712 (S.D. Ind. 1958); *Sac & Fox Nation of Oklahoma v. Cuomo*,

193 F.3d 1162, 1167 (10th Cir. 1999); *Naartex Consulting Corp. v. Watt*, 722 F.2d

779, 792 (D.C. Cir. 1983).

---

[5] By its very nature, the statute can only be applicable where jurisdiction exists.  *See Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 109 S.Ct. 2218 (1989) (since §1653 speaks of amending jurisdictional allegations, it applies if plaintiff makes an incorrect statement about jurisdiction that actually exists, but does not apply where there are defects in the jurisdictional facts themselves).

[6] Given that the statute is designed to correct "defective" jurisdictional allegations, it presupposes that an error was made by the plaintiff or plaintiff's counsel in pleading jurisdiction in the operative complaint.

The rule was first announced in *Joy v. Hague*, a case which is directly on point. In *Joy*, the district court found that plaintiffs' jurisdictional allegations were defective and (like the district court in this case) gave plaintiffs the opportunity to establish that jurisdiction existed. Plaintiffs failed to do so and the district court dismissed the action for lack of jurisdiction. 175 F.2d at 395-96. On appeal, plaintiffs filed a motion to amend the complaint to fix the jurisdictional allegations. The First Circuit held that, because plaintiffs had failed to amend in response to the district court's invitation to do so, plaintiffs could not seek leave from the appellate court "to do what they failed to do below." *Id.*, at 396. The First Circuit explained that, given the circumstances, "this is not an appropriate case for the exercise of our power as an appellate court, under 28 U.S.C.A. § 1653." *Id.*

The Ninth Circuit has adopted and approved the rule set forth in *Joy*, denying amendment on appeal to correct jurisdictional defects where the district court previously offered the plaintiff the opportunity to correct the defects and plaintiff failed to do so. *Dower*, 329 F.2d at 685.[7] In *Dower*, the plaintiff commenced an action against defendant for violation of the Federal Aviation Act, which governs claims of discrimination on interstate flights. *Id.*, at 684-85. The district court ruled that the flight at issue was not an interstate flight and thus not

---

[7] Although *Dower* does not expressly discuss Section 1653, the reasoning behind the court's decision is still applicable to the similar facts present in this case.

governed by the federal statute.  *Id.,* at 685.  On appeal, the plaintiff sought to

establish that the flight at issue was an interstate flight.  The Ninth Circuit rejected

plaintiff's attempt and affirmed the dismissal, holding that:

> The record shows that the district court offered appellant <u>the
> opportunity</u> to amend his complaint in this respect and that the offer
> was rejected.  It was not error, then, to dismiss without leave to
> amend.

329 F.2d at 685, emphasis added (citing *Joy*).[8]

Moreover, in cases virtually identical to the present one, numerous other

circuits have followed the rule announced in *Joy*, holding that a plaintiff cannot

correct defective jurisdictional allegations in the appellate court under Section

1653 if the plaintiff had <u>the opportunity</u> to correct those allegations in the district

court and failed to do so.  *See e.g., John Birch Society,* 377 F.2d at 198-99; *Sarnoff*,

798 F.2d at 1079; *Mills*, 118 F.3d at 53 ("we reiterate our view that, where a party

has had an opportunity to seek to amend its pleadings in the district court, it is not

appropriate for that party belatedly to seek leave to amend on appeal pursuant to 28

---

[8] The rule announced in *Dower* is consistent with similar limitations placed
on a party's ability to amend its pleadings under other federal authorities.  For
instance, while leave to amend is liberally granted under Federal Rule of Civil
Procedure 15, it is <u>not error</u> for a court to <u>deny leave to amend</u> where the party
seeking the amendment has had the opportunity to correct a defective allegation
and failed to do so.  *See Mir v. Fosburg*, 646 F.2d 342, 347 (9th Cir. 1980)
("district court has broad discretion to deny leave to amend, particularly where the
court has already given a plaintiff the opportunity to amend . . ."); *Miller v.
Yokohama Tire Corp.*, 358 F.3d 616, 622 (9th Cir. 2004) (where plaintiff has
previously filed an amended complaint, the district court's discretion to deny leave
is "particularly broad").

USC § 1653"); *Dubach*, 135 F.3d at 592-93 (denying motion to amend jurisdictional allegations on appeal to allege "citizenship" rather than "residency," where plaintiff "had notice of a jurisdictional defect in his claims, had the opportunity to correct it in the District Court, but failed to do so"); *Sac & Fox Nation of Oklahoma*, 193 F.3d at 1167 (denying plaintiff amendment under section 1653 where plaintiff failed to take necessary action to correct defective allegations in district court despite knowledge of the defects); *Daneshvar*, 237 Fed.Appx. at 315-16 (refusing to allow amendment under section 1653 because plaintiff had reasonable opportunity to cure defect before appeal); *Naartex Consulting Corp.,* 722 F.2d at 792 n. 21 ("While we are cognizant that '[d]efective allegations of jurisdiction may be amended,' 28 U.S.C. § 1653, courts are not obliged to indulge litigants indefinitely, especially when their amendments constitute futile gestures.").

In *Sarnoff*, the Seventh Circuit upheld the district court's dismissal of the complaint for lack of jurisdiction where the plaintiff had failed to avail himself of the chance to amend the allegations provided by the district court. 798 F.2d at 1077-79. The Court recognized that Section 1653 allows amendments where "the parties, not suspecting a jurisdictional difficulty, had <u>no reasonable opportunity</u> to cure it before appeal," but held that the plaintiff "had fair warning in the district court and failed to act on it; enough is enough." *Id.*, at 1079 (emphasis added).

In *John Birch Society*, the Second Circuit applied the same rule in circumstances similar to those present here. Like Plaintiff, the plaintiff in *John Birch Society* filed a complaint seeking to base jurisdiction on diversity of citizenship but alleged the "residency" rather than the "citizenship" of various parties. *Id*., at 196-97. On defendant's motion to dismiss on numerous grounds, including lack of jurisdiction, the district court dismissed the complaint for lack of subject matter jurisdiction, "without prejudice to the filing of an amended complaint within twenty days. . ." *Id*., at 197. Twenty days later, no amendment having been filed, the district court entered judgment dismissing the complaint. *Id*.

Plaintiff then filed an application for relief from dismissal and for permission to amend. *Id*. In support of its application, Plaintiff contended that it had prepared an amended complaint curing the defect and that its failure to file the amended pleading was "the result of excusable delay," caused by problems with the mail. *Id*., 198. The district court denied the application, and Plaintiff appealed, seeking to amend the allegations in the appellate court pursuant to Section 1653. *Id*., at 197-98.

The Second Circuit held that the district court did not abuse its discretion in denying the application because the district court had pointed out the errors in the jurisdictional allegations and afforded the plaintiff a reasonable opportunity to amend. *Id*., at 198. The Court also denied plaintiff's request for amendment on

appeal.  The Court recognized that Section 1653 is usually construed liberally, but explained that:

> Where, however, as in the present case, the district court has pointed out the defects in the complaint and has afforded a plaintiff a reasonable time to amend and the plaintiff, with the intention to delay, has not done so, the appellate court will not allow the plaintiff-appellant leave to amend.

*Id.*, at 199.

The case of *Harris v. American Legion,* is also instructive.  In *Harris,* in attempting to allege diversity jurisdiction, plaintiff incorrectly alleged that defendants were "residents," not "citizens," of Indiana.  The district court called the error to the plaintiff's attention and gave plaintiff the opportunity to correct the error.  In the amended complaint, plaintiff again alleged that one of the defendants was a "resident" of Indiana.  162 F.Supp. at 711.

The district court dismissed the complaint.  While the district court recognized that a plaintiff should not be denied the right to amend under section 1653 when jurisdiction is questioned by the court or a party, it held that "when the court calls the plaintiff's attention to the defective allegation as to citizenship and affords the plaintiff the opportunity to amend . . . the plaintiff's right to amend and submit proof has been exhausted under said section."  *Id.,* at 712.

Here, the district court issued an OSC in which it told Plaintiff that she had not properly pleaded diversity jurisdiction and <u>gave her two weeks to correct her</u>

allegations.  ER 6-9.  Despite this opportunity, Plaintiff failed to correct one of the defects.  ER 184-187.  Accordingly, Plaintiff has exhausted her ability to amend pursuant to Section 1653 and is not entitled to amend her allegations at this late stage.

Plaintiff argues on appeal that, if relief is denied, this Court will be imposing a "one strike and you're out" rule.  Not so,  Plaintiff failed to properly allege diversity jurisdiction in her original complaint (strike one), did the same in her first amended complaint (strike two), and then failed to correct the defective allegations after the district court advised her of the specific defects (strike three).  As the Seventh Circuit stated in *Sarnoff,* "enough is enough."  798 F.2d at 1079.  Section 1653 is no longer available.

Given the authority discussed above, Plaintiff's characterization of her authority as "mandating" amendment under Section 1653 (AOB at 26) is disingenuous at best.  Plaintiff's cases are inapposite, as they arise in factual and procedural contexts wholly distinguishable from this case.[9]

In the majority of the Ninth Circuit cases, the <u>jurisdictional defect</u> which precipitated the request for an amendment was <u>not raised while the case was pending before the district court</u>, but was instead <u>raised for the first time while the</u>

---

[9] One case, *Anrig v. Ringsby United*, 603 F.2d 1319 (9th Cir. 1978), does not even apply Section 1653, holding that dismissal for <u>improper venue</u> was improper without investigation of possibility of dismissing or transferring dispensable parties.

<u>case was on appeal</u> from a dismissal on grounds other than jurisdiction. *See Blue Ridge Ins Co. v. Stanewich*, 142 F.3d 1145, 1147 (9th Cir. 1998) (on appeal of grant of summary judgment, appellate court "raised *sua sponte* the issue of the district court's subject matter jurisdiction"); *Luehrs v. Utah Home Fire Ins. Co.*, 450 F.2d 452, 454 (9th Cir. 1971) (on appeal of grant of summary judgment, the appellate court raised the jurisdictional question *sua sponte* "at the time of oral argument"); *Barrow Dev. Co. v. Fulton Ins. Co.*, 418 F.2d 316, 317 (9th Cir. 1969) (on appeal of grant of summary judgment, the appellate court questioned "the sufficiency of the showing of diversity"); *London v. Standard Oil Co.*, 417 F.2d 820, 821-22 (9th Cir. 1969) (on appeal of jury verdict and judgment entered thereon, appellate court inquired during oral argument whether allegations of removal petition were sufficient to show diversity jurisdiction); *Mantin v. Broadcast Music, Inc.,* 244 F.2d 204, 205-06 (9th Cir. 1957) (on appeal from dismissal for failure to state a claim, question of whether court has jurisdiction raised for first time by appellate court); *Fifty Associates v. Prudential Ins. Co., Inc.*, 446 F.2d 1187, 1188-89 (9th Cir. 1970) (defendant argued for first time on appeal that judgment of foreclosure was invalid because district court lacked subject matter jurisdiction); *Swayne & Hoyt v. Barsch,* 226 F. 581, 591 (9th Cir. 1915) (on defendant's appeal of judgment, Ninth Circuit *sua sponte* questioned diversity jurisdiction); *Veeck v. Commodity Enters. Inc.*, 487 F.2d 423, 426 (9th

Cir. 1973) (in vacating default judgment for improper service and lack of personal jurisdiction, Ninth Circuit noted *sua sponte* that the complaint did not sufficiently allege diversity jurisdiction).

In the balance of the cases, although the jurisdictional defect was raised in the district court, the party seeking the amendment <u>did not have the opportunity to fix the jurisdictional defect in the district court</u>. *See Snell v. Cleveland*, 316 F.3d 822, 825 (9th Cir. 2002) (district court *sua sponte* vacated judgment in and dismissed related, closed case for lack of diversity jurisdiction without allowing parties to closed case the opportunity to correct the defects); *Molnar v. National Broadcasting Co.*, 231 F.2d 684, 686 (9th Cir. 1956) (district court dismissed action based on existence of Doe defendants who destroyed diversity without providing plaintiff with the opportunity to amend allegations or dismiss Doe defendants).

Plaintiffs' authorities from other circuits fall into the same two categories:

(1) <u>the jurisdictional defect was raised for the first time on appeal</u> (*see Newman-Green, Inc.*, 490 U.S. at 828 (during oral argument, the appellate court "inquired as to the statutory basis for diversity jurisdiction, an issue which had not been previously raised either by counsel or by the District Court Judge")[10]; *Howard v. DeCordova*, 177 U.S. 609, 614, 20 S.Ct. 817, 819, 44 L.Ed. 908 (1900)

---

[10] *Newman-Green* is also inapposite because there the Supreme Court refused to apply Section 1653. 490 U.S. at 832.

(on appeal of dismissal on other grounds, question of whether diversity jurisdiction existed was raised for first time by appellate court); *Draim v. Virtual Geosatellite Holdings, Inc.*, 522 F.3d 452, 454 (D.C. Cir. 2008) (on appeal from judgment for defendant, appellate court granted unopposed motion to amend where there was no indication that jurisdictional defect was raised in district court); *Mutual Serv. Casualty Ins. Co. v. Country Life Ins. Co.*, 859 F.2d 548, 550 (7th Cir. 1988) (noting that jurisdictional defect was not noticed until after judgment was entered by the district court)); or

(2) the party seeking amendment was not previously provided with an opportunity to amend (*see Whitmire v. Victus Ltd.*, 212 F.3d 885, 886 (5th Cir. 2000) (after granting summary judgment on federal claims and dismissing state claims for lack of pendent jurisdiction, district court denied plaintiff's motion to amend to allege diversity jurisdiction over state claims); *Odishelidze v. Aetna Life & Casualty Co.*, 853 F.2d 21, 24 (1st Cir. 1988) (after granting defendant's motion to dismiss state law claims for lack of jurisdiction, district court denied plaintiff's motion for reconsideration which argued that diversity jurisdiction existed); *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 639 (2d Cir. 2005) (holding that district court should have provided plaintiff with the opportunity to amend her complaint after granting defendant's motion to dismiss)).

**C.** **Plaintiff Has Not Established That the District Court Abused Its Discretion in Denying Her Rule 60(b) Motion**

A district court's refusal to vacate a judgment under Rule 60(b) is reviewed pursuant to a highly deferential standard and will be reversed "only upon a *clear showing* of abuse of discretion." *Pena,* 770 F.2d at 814 (emphasis in original).

Plaintiff attempts to establish that the district court abused its discretion in denying her Rule 60(b) Motion by leaping to three unsupported conclusions: (1) that the district court failed to consider the Rule 60(b) motion in light of Section 1653; (2) the district court applied an erroneous *per se* rule that attorney error cannot provide grounds for relief under Rule 60(b)(1); and (3) that the district court failed to apply the factors enunciated in *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Ptshp*, 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993).

**1.** **Given Plaintiff's Discussion of Section 1653 in Her Rule 60(b) Motion and the District Court's Citation of the Section in Its Order, Plaintiff Cannot Establish that the District Court Failed to Consider the Section**

Plaintiff's contention that the district court abused its discretion by failing to consider her Rule 60(b) Motion in light of Section 1653 is belied by the factual record and the governing law. While Plaintiff points to the district court's single citation of Section 1653 as support for her argument, Plaintiff cites no authority which requires the district court to engage in a lengthy discussion of the Section.

The fact that Plaintiff raised Section 1653 in both her moving papers and reply papers and the fact that <u>the district court cited Section 1653 in its Order</u> establish that the district court considered Section 1653. That is enough.

Finally, even if such a review were allowed, there is no question that this Court would reach the same conclusion as the district court. As discussed above, it is well established that Section 1653 is not available where, as here, a plaintiff has been provided the opportunity to correct defective jurisdictional allegations but has failed to do so. *See* Section VII.B., *supra.*

Undoubtedly aware of this line of authority, Plaintiff attempts to avoid it by citing *Whitmire* for the proposition that a plaintiff should be given repeated opportunities to cure under Section 1653. However, neither *Whitmire* nor any other authority cited by Plaintiff stands for that proposition. In *Whitmire*, the Fifth Circuit found that the district court had abused its discretion because it had not provided plaintiff with <u>any</u> opportunity to amend its pleading either before or after dismissal. *Whitmire*, 212 F.3d at 886. Moreover, the portion of the opinion cited by Plaintiff which mentions repeated failures to cure deficiencies is a quote from *Forman v. Davis,* 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d. 222 (1962), which does not discuss either Rule 60(b) or Section 1653 but rather is an analysis of a party's right to amend under F.R.C.P. 15.

*Odishelidze*, which is heavily relied upon by Plaintiff, is also wholly

distinguishable. There, although the jurisdictional defect was identified while the

case was pending in the district court, the <u>district court did not provide the plaintiff</u>

<u>with any opportunity</u> to fix the defect either prior to or after dismissing the case.[11]

853 F.2d at 24. Instead, the district court granted defendant's motion to dismiss

plaintiff's state law claims for lack of jurisdiction and then denied plaintiff's

motion for reconsideration which argued that diversity jurisdiction existed. *Id.*

Consequently, Plaintiff has failed to establish that the district court failed to

consider Section 1653 in denying her Rule 60(b) motion or that such a failure,

under the present circumstances, would be an abuse of discretion.

>    **2.  Plaintiff Has Not Met Her Burden of Establishing the District Court Incorrectly Applied the Law in Denying Her Rule 60(b) Motion**

>    **a.  Plaintiff's Claim of Error Should Be Limited to Error in Applying the Law of Mistake, Which Plaintiff Has Failed to Establish**

In her opening brief, Plaintiff seeks to demonstrate that the district court

erred by misapplying the law of "excusable neglect" under Rule 60(b). AOB at

41-48. However, in her Rule 60(b) motion, Plaintiff argued that relief from

dismissal was justified <u>based solely on Plaintiff's "mistake,"</u> and that Plaintiff's

---

[11] *LeBlanc v. Cleveland,* 248 F.3d 95, 100 (2d Cir. 2001), and *Averbach v. Rival Manuf. Co.,* 809 F.2d 1016, 1019 (3d Cir. 1987), are distinguishable on the same grounds.

<u>mistake did not constitute "neglect" under Rule 60(b)</u>. *See* ER 70 ("Relief is proper under Rule 60(b)(1) where a party's non-compliance with an order is based on mistake."); ER 73 ("Viewed in the context of *Transit Casualty Co.* and *Jolin*, it is clear that Plaintiff's situation here constitutes excusable mistake under Rule 60(b)."); ER 73 n. 8 ("Because Plaintiff diligently endeavored to comply with the deficiencies cited in the OSC, her mistaken interpretation of the Court's OSC does not constitute 'neglect.'"); ER 36 ("In her Motion, Plaintiff established that her counsel's incorrect – but not unreasonable – misreading of a court order qualifies as a simple, honest mistake under Rule 60(b)(1)."); ER 37 ("[Defendant's] Reliance on 'Excusable Neglect' Case Law is Misplaced and Unavailing Here."); ER 36 n.5 ("*Transit* was cited to show that the type of mistake that occurred here should be viewed under the 'mistake' analysis of Rule 60(b)(1)."). Plaintiff also represented to the district court that "mistake" was a ground for relief under Rule 60(b) <u>separate</u> from "excusable neglect." ER 38 ("*Latshaw* expressly recognizes that mistake and excusable neglect are *separate* grounds for relief under Rule 60(b)(1) . . .") (emphasis in original).

It is clear from the district court's Order that, at Plaintiff's insistence, the district court analyzed Plaintiff's motion under the law of "mistake." In the Order, the Court described the motion as a "motion to re-open the case, claiming that her failure to respond adequately to the OSC was an excusable mistake." ER 2. In its

Discussion section, the Court explained that Plaintiff had failed to cite any Ninth Circuit cases supporting her argument that relief should be granted "to avoid a case being decided on the basis of a technical error or slight <u>mistake</u> by her attorneys." ER 3. Consequently, the Court held that "Plaintiff's failure to adequately respond to the OSC was <u>not</u> an excusable <u>mistake</u> under FRCP 60(b)." ER 3 (emphasis added).

Despite the foregoing, Plaintiff now seeks to assign error to the district court for not considering her motion under the "excusable neglect" prong of Rule 60(b)(1). Plaintiff's attempt to change course at this late date must fail.

Although it is clear from the record that the district court, at Plaintiff's request, analyzed the motion under the mistake prong of Rule 60(b)(1), Plaintiff fails to make any showing that the district court erred in applying the law of mistake. In fact, her Brief does not even set forth the standard for evaluating whether a mistake can be grounds for relief under Rule 60(b). The briefing before the district court, on the other hand, did discuss the law of mistake and demonstrates that the district court did not abuse its discretion in denying Plaintiff's Motion.

As Defendants argued below, the Ninth Circuit cases cited in Plaintiff's moving papers did not support her request for relief because each case involved mistakes <u>committed by the district court</u>, not by the party seeking relief. ER 344

(Docket No. 445), citing *Fid. Fed. Bank, FSB v. Durga Ma Corp.*, 387 F.3d 1021, 1024 (9th Cir. 2004) (finding that district court acted within its discretion under Rule 60(b) when it corrected the post-judgment interest rate that it applied to the judgment); *Kingvision Pay-Per-View Ltd. v. Lake Alice Bar*, 168 F.3d 347, 350 (9th Cir. 1999) (allowing district court to amend its judgment based on court's own mistake or inadvertence); *Gila River Ranch, Inc. v. U.S.*, 368 F.2d 354, 356-57 (9th Cir. 1966) (holding that the district court can correct its own judicial error under Rule 60(b)(1)).[12] Consequently, the district court did not abuse its discretion in denying Plaintiff relief under the mistake prong of Rule 60(b)(1).

By asking the Ninth Circuit to ignore the foregoing, and now consider her motion on different grounds, Plaintiff is seeking *de novo* review of the district court's findings. *De novo* review is not the appropriate standard and the appellate court cannot simply substitute its judgment for that of the lower court. *Gonzales v. Free Speech Coalition*, 408 F.3d 613, 618 (9th Cir. 2005).

To the extent the district court erred in not analyzing the Rule 60(b) Motion under the law governing "excusable neglect" rather than "mistake," Plaintiff invited the error. Plaintiff may not complain on appeal of "errors" below for which

---

[12] The non-Ninth Circuit cases relied upon by Plaintiff similarly failed to support her Motion. In fact, Plaintiff's lead case discussed at pages 8-9 of her Motion actually supported the denial of the relief she sought. In *Transit Cas. Co. v. Sec. Trust Co.*, 441 F.2d 788, 789 (5th Cir. 1971), the district court <u>denied</u> a motion to reopen the case, which the Fifth Circuit <u>affirmed</u>.

she is responsible. *Grocery Outlet Inc.*, 497 F.3d at 951; *Twentieth Century Fox Film Corp. v. Goldwyn*, 328 F.2d 190, 214-15 (9th Cir. 1964). *See also United States v. Bonnell*, 180 F.2d 145, 148 (9th Cir. 1950) ("Having conceded in the proceedings below that the rate of interest was discretionary with the district court, the Government should not be heard on appeal to assert the contrary."); *United States v. Hudspeth*, 384 F.2d 683, 688 (9th Cir. 1967) (holding that plaintiff "cannot now fault the trial court for proceeding as both parties requested" and finding that "even if we were to assume that either of the government's present views as to the applicable legal standard is correct, we could not know how the record might have differed had the court been asked to apply that standard at trial."). Nor can she complain that the Court failed to apply legal doctrines which she did not present in her moving papers. *Balakian v. Balakian*, 2008 WL 4539481*3 (E.D. Cal. October 10, 2008) ("The Bankruptcy Court cannot have abused her discretion in failing to apply legal doctrines not presented by the moving party.")

*Grocery Outlet Inc.* and *Goldwyn* are particularly instructive. In *Grocery Outlet Inc.*, the plaintiff appealed from a preliminary injunction granted in favor of defendant in a trademark dispute. In granting the injunction, the court found that the defendant was likely to prevail on its trademark infringement claim because it had proven its ownership of the trademarks at issue and plaintiff was unlikely to

prove its abandonment defense. *Id.*, at 951. As in this case, the Ninth Circuit reviewed the district court's decision to grant the injunction for an abuse of discretion. *Id.*, at 950.

On appeal, the plaintiff argued that the district court had committed error by applying the wrong legal standard to the abandonment defense (the clear and convincing evidence standard instead of the preponderance of the evidence standard). The Ninth Circuit refused to consider the issue, holding that the plaintiff had "waived its challenge on this point by adopting the clear and convincing standard in its briefing in the district court." *Id.*, at 951.

In *Goldwyn*, the Ninth Circuit reached a similar result. In its answer to various claims brought by plaintiff, the defendant had asserted affirmative defenses based on both a one-year and three-year statute of limitations. 328 F.2d 214. However, throughout the lawsuit the defendant had relied upon only the three year statute of limitations as a defense. Specifically, the defendant had moved for, and been awarded, partial summary judgment based upon the statute of limitations for any claims accruing more than three years prior to the inception of the lawsuit. In addition, the defendant failed to mention the one-year statute of limitations in a pre-trial order which set forth the defendant's statement of trial issues and focused, instead, on other defenses to all claims accruing within the three years prior to commencement of the lawsuit. *Id.*, at 214-15.

After judgment was entered in favor of plaintiff, defendant argued on appeal that the district court should have applied the one-year statute of limitations. *Id.*, at 198. The Ninth Circuit found that the defendant "invited the asserted error which they contend results from application of the three-year statute . . . ." *Id.*, at 215. The defendant could not complain that the district court erred in applying the three-year statute of limitations where the defendant itself had argued that the three-year statute applied. *Id.*, at 214-15.

Here, Plaintiff should be precluded from arguing on appeal that the district court erred in applying the excusable neglect standard under Rule 60(b). As discussed above, Plaintiff moved for relief under Rule 60(b) based on mistake, arguing to the district court that excusable neglect did not apply. Under the case law cited above, given Plaintiff's arguments to the district court, Plaintiff cannot now complain that the district court erred in failing to apply the law of excusable neglect.

**b.      Plaintiff Has Not Established That the District Court Misapplied the Law of Excusable Neglect**

Even if this Court considers Plaintiff's argument that the district court erred by misapplying the law of excusable neglect (rather than mistake), it should still affirm the order. The underlying record and applicable law do not support Plaintiff's claims that the district court applied an erroneous per se rule that

attorney error cannot provide grounds for relief under Rule 60(b)(1) or failed to consider the equitable factors set forth in *Pioneer*.

Although Plaintiff's moving papers provided no justifiable explanation for her counsel's purported "mistake" in responding to the OSC, Defendants' Opposition set forth in detail the facts and circumstances surrounding the purported mistake, including the clear and unambiguous language of the OSC. ER 344 (Docket No. 445). In addition, despite the fact that Plaintiff represented that the *Pioneer* factors were not applicable to her Motion,[13] Defendants analyzed the factors in the Opposition, arguing that a review of the factors compelled a finding that Plaintiff was not entitled to relief under Rule 60(b). *Id.* Plaintiff then discussed the factors in her Reply, concluding that "even if this case fell within the rubric of 'excusable neglect,' the Court should still grant relief, because all of the *Pioneer* factors weigh in favor of permitting amendment." ER 41.

Given this discussion of the *Pioneer* factors in the papers, the only logical inference is that the district court considered the factors in reaching its decision. Nothing in the district court's Order indicates that the factors were not considered. As the Supreme Court explained in *Pioneer,* "the determination as to whether neglect is excusable 'is at bottom an equitable one, taking into account all relevant

---

[13] Plaintiff only mentioned *Pioneer* in a footnote, representing to the district court that the *Pioneer* factors only had to be considered in cases involving "excusable neglect," but that here Plaintiff's "mistaken interpretation of the Court's OSC does not constitute 'neglect.'" ER 73 n.8, emphasis added.

circumstances surrounding the party's omission.'"  ER 40, quoting *Pioneer*, 507

U.S. at 395.  The district court's Order demonstrates that it considered all the

circumstances under which the mistake was made (as required by *Pioneer*) and

ultimately found that:

> Plaintiff's failure to adequately respond to the OSC was not an
> excusable mistake under FRCP 60(b).  The OSC clearly notified
> Plaintiff of problems with the jurisdictional allegations in her
> complaint. [footnote omitted].  In response to the OSC, Plaintiff
> mistakenly failed to address the problems with her jurisdictional
> allegations. . . . Thus, Plaintiff is foreclosed from seeking relief under
> FRCP 60(b) from the Court's order dismissing the case.

ER 3.

Finally, the district court's citation to cases decided prior to the Ninth

Circuit's *Pincay* decision does not establish that the court applied an erroneous *per

se* rule.  Even though *Pioneer* adopted an equitable balancing test, it also held that

"inadvertence, ignorance of the rules, or mistakes construing the rules do not

usually constitute 'excusable neglect.'"  *Id*., at 392.  The use of the word "usually"

suggests that the balancing test should not be applied so as to excuse every

"mistake."  While courts are required to apply the balancing test in excusable

neglect cases, there will still be certain types of neglect which, regardless of the

surrounding circumstances, are simply too egregious to be excused.  In other

words, by requiring the district court to balance certain equitable factors, the

Supreme Court was not creating a *per se* rule that <u>any</u> excuse is sufficient to support a finding of <u>excusable</u> neglect.

As a result, prior cases discussing the types of mistakes that have been typically held to be inexcusable may still provide useful guidance in conducting the equitable balancing. For example, in *Latshaw v. Trainer Wortham & Co., Inc.*, which was decided two years <u>after</u> *Pincay*, the Ninth Circuit held that an attorney's error did not constitute excusable neglect or mistake, without expressly discussing any of the *Pioneer* factors. 452 F.3d 1097, 1100-02 (9th Cir. 2006). In so holding, the Ninth Circuit, like the district court here, cited the pre-*Pincay* case of *Engleson v. Burlington N. R.R. Co.*, 972 F.2d 1038, 1043 (9th Cir. 1993) in support of its decision. *Id.*, at 1101-02.

*Latshaw* demonstrates that, although the Ninth Circuit has considered the factors enunciated in *Pioneer* in ruling on motions for relief under Rule 60(b)(1), the courts have done so only where the neglectful party has offered a valid excuse for its neglect. In other words, where the neglect of the party is plainly <u>inexcusable</u>, the Ninth Circuit has so held without a lengthy discussion of the *Pioneer* factors. Here, as discussed below in Section VII.C.3.b., *infra*, Plaintiff's mistake was so plainly inexcusable that, like the mistake in *Latshaw*, it does not justify the requested relief.

    c.    **Substantial Evidence Supports the Conclusion That the Pleading Allegations Concerning Plaintiff Were Not the Result of "Mistake"**

In her original, first amended, and proposed second amended complaints, Plaintiff alleged that she was a "resident" of Connecticut. However, in all three of these complaints, she alleged that the individual defendants (Weinberg and Philpott) were "domiciled" in Manitoba and California, respectively. ER 271-272 (first amended complaint). The district court could well have concluded that this disparity in language was not a "mistake." While Plaintiff alleged and offered evidence that she "resided" in Connecticut in May 2005 (when the original complaint was filed), she offered no evidence that she intended to remain there. This lack of evidence undercuts Plaintiff's "mistake" theory and supports the denial of her Rule 60(b) motion.

To establish citizenship for diversity purposes, a natural person must be both a citizen of the United States and a "domiciliary" of one particular state. *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983). A person's domicile is the place he or she resides *with the intention to remain there indefinitely*. *See Gilbert v. David*, 235 U.S. 561, 569, 35 S.Ct. 164, 59 L.Ed. 360 (1915); *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001). As with other jurisdictional determinations, the court looks to a party's domicile at the

time the lawsuit was filed, not when the cause of action arose or when the case comes to trial. *LeBlanc,* 248 F.3d at 100.

Plaintiff presented deposition testimony that she resided in Connecticut in May 2005, when the original complaint was filed. ER 99-108. However, contrary to her counsel's arguments (ER 87),[14] the excerpted pages of Plaintiff's deposition were silent on whether she intended to stay indefinitely in Connecticut at the time. The absence of such evidence, combined with the repeated and simultaneous allegations of Plaintiff's "residence" but Defendants' "domicile," provides an independent basis to conclude that Plaintiff's insufficient allegations of citizenship were not the product of a mistake. Since there was sufficient evidence of no mistake, the district court would not have abused its discretion in denying leave to amend to properly allege citizenship, as Plaintiff attempted to do in her Rule 60(b) motion. ER 115.

### 3. The District Court Did Not Abuse Its Discretion in Denying the Rule 60(b) Motion, and Any Claimed Error Committed by the District Court Was Harmless

#### a. Under *Pioneer,* Attorney Error Does Not Always Constitute Excusable Neglect

Contrary to Plaintiff's suggestion, the Supreme Court's decision in *Pioneer* did not create a *per se* rule that attorney error is <u>always</u> excusable. Although the

---

[14] According to counsel, Plaintiff's deposition testimony evidenced that Plaintiff "has at all times since January 2005 been a resident <u>and a citizen</u> of the State of Connecticut." ER 87 (emphasis added).

*Pioneer* court held that the determination of whether admitted neglect is excusable

is an equitable one, the Supreme Court also reiterated that "<u>inadvertence, ignorance

of the rules, or mistakes construing the rules do not usually constitute 'excusable'

neglect</u>." 507 U.S. at 392 (emphasis added).

Since *Pioneer*, the Ninth Circuit has repeatedly found that neglect of the

type at issue here is not excusable, even when considered under the equitable

balancing test enunciated by the Supreme Court. *See e.g., Kyle v. Campbell Soup

Co.*, 28 F.3d 928, 931 (9th Cir. 1994); *Speiser, Krause & Madole P.C. v. Ortiz*, 271

F.3d 884, 886-87 (9th Cir. 2001); *Allmerica Financial Life Ins. and Annuity Co. v.

Llewellyn*, 139 F.3d 664, 665-66 (9th Cir. 1997) ("counsel's failure to plead an

affirmative defense of waiver in the First Amended Answer does not provide a

basis for equitable relief under Rule 60(b)(1)"); *Comm. for Idaho's High Desert,

Inc. v. Yost,* 92 F.3d 814, 825 (9th Cir. 1996) (holding that attorney's ignorance of

the rules for filing applications for attorneys' fees was not excusable neglect).[15]

_____

[15] Other circuits have made similar findings since *Pioneer*. *See e.g.,
Sparrow v. Heller,* 116 F.3d 204, 206-07 (7th Cir. 1997) (upholding court's
dismissal for lack of subject matter jurisdiction based on plaintiff's failure to plead
the jurisdictional amount because attorney's negligence was inexcusable neglect
and not a basis for relief under 60(b)(1)); *Noah v. Bond Cold Storage,* 408 F.3d
1043, 1045 (8th Cir. 2005) (holding that attorney's failure to comply with court's
orders was not result of excusable neglect but rather result of ignorance or
carelessness on the part of an attorney which did not justify relief under Rule
60(b)); *Easley v. Kirmsee,* 382 F.3d 693, 697-98 (7th Cir. 2004) (holding that
failure to respond to summary judgment motions based on attorney's purported
misinterpretation of court's orders did not justify relief under 60(b)(1) because

In *Kyle*, the Ninth Circuit held that the district court abused its discretion in finding excusable neglect based upon an attorney's mistaken belief that the 30-day deadline to file a post-trial motion for attorneys' fees could be enlarged for three days when service of the motion was by mail. The Ninth Circuit considered the *Pioneer* factors but still found that the neglect at issue was not excusable:

> In this case, the district court found that counsel acted in good faith, that he had not demonstrated professional incompetence, and that [defendant] would not be prejudiced by allowing the time enlargement. Although these factors might support a finding of excusable neglect in a case involving different facts, we hold that they do not suffice where the only claimed neglect is an attorney's addition of three days for service by mail to a time period running from docketing of an order or judgment.

28 F.3d at 931.

The Court distinguished the case from *Pioneer*, where the neglect was caused by a "dramatic ambiguity" which could have confused even experienced counsel, finding that the present counsel committed a mistake in interpreting rules which were <u>not</u> ambiguous. *Id*. The Ninth Circuit explained that:

> Although the Court in *Pioneer* recognized that "excusable neglect" is a flexible, equitable concept, the Court also reminded us that "inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect." In this case, counsel has not presented a persuasive justification for his misconception of unambiguous rules.

---

"court's orders were neither ambiguous nor confusing, and there was nothing contradictory in the court's orders that would or should cause a diligent, conscientious, intelligent, qualified and well-trained attorney to misinterpret, much less be misled by the court's directives.").

*Id.*, at 931-32 (citations omitted).[16]

In 2001, the Ninth Circuit reached a similar result in *Speiser*, a case cited by Plaintiff in her opening brief (AOB at 46). There, an attorney (Ortiz) entered into an agreement with a law firm (Speiser Krause) to divide legal representation arising out of an airplane crash. When a dispute arose regarding attorneys' fees, the law firm sued in state court; Ortiz then removed the action to federal court. *Speiser*, 271 F.3d at 885-86. When Ortiz failed to file an answer on a certain date as required by Rule 81(c), the district court issued an Order to Show Cause regarding jurisdiction. When Ortiz did not respond to the court's OSC or file an answer, the law firm took their default. *Id.* at 886.

Ortiz then filed a motion to set aside the default on the ground that his failure to understand Rule 81(c) constituted excusable neglect under Rule 60(b)(1). Ortiz also argued that the court's issuance of the OSC "perplexed and excused him because, he thought, perhaps the case might not have actually been removed." *Id.*

---

[16] Although *Kyle* involved a request for relief based on excusable neglect under Fed. R. Civ. Proc. 6(b), the court's analysis is still persuasive. The *Kyle* court based its analysis on the plain meaning of the phrase "excusable neglect," and drew on the use of the phrase in other procedural contexts. 28 F.3d at 930-32. The Supreme Court applied a similar analysis in *Pioneer*. Although the precise issue in *Pioneer* was whether the conduct at issue constituted excusable neglect under Bankruptcy Rule 90066(b)(1), the Court relied upon the meaning of the phrase in other contexts, including under Fed. R. Civ. Proc. 60(b)(1). 507 U.S. at 391-93.

at 886. The court denied defendants' Rule 60(b) motion and ordered the entry of default judgment. *Id.*

The Ninth Circuit affirmed, explaining that "'mistakes construing the rules do not usually constitute "excusable" neglect.'" *Id.* at 886 (quoting *Pioneer*, 507 U.S. at 392). The court also rejected defendant's attempt to blame his neglect on confusion he claimed was caused by the district court's issuance of the OSC regarding jurisdiction, noting that defendant could not "excuse one failure to read a plain provision of the law by resting upon his failure to read still another equally plain provision." *Id.* at 887. Accordingly, the Ninth Circuit affirmed the denial of the Rule 60(b) motion because "counsel ha[d] not presented a persuasive justification for his misconstruction of nonambiguous rules." *Id.*, at 886.

The above cases make clear that, while the district court is required to consider the *Pioneer* factors, it is not required to conclude that those factors weigh in favor of excusing the error. The party seeking relief must still provide some type of justification for its error, some reason demonstrating that the mistake or neglect is excusable. If such a showing were not required, then the third *Pioneer* factor (the "reason for the delay") would be meaningless.

### b. Plaintiff's Failure to Properly Respond to the OSC Was Not Excusable Neglect

Tellingly, in evaluating the *Pioneer* factors for the Ninth Circuit, Plaintiff does not take into consideration in any way the "error" committed by her counsel.

Nowhere during her lengthy discussion of the equities (AOB at 48-54) does Plaintiff provide an explanation for her failure to adequately respond to the OSC. Plaintiff avoids this issue by ascribing a very literal meaning to the third *Pioneer* factor (reason for the delay) which allows her to discuss the short delay in the filing of her Rule 60(b) Motion rather than the reason for her counsel's neglect.

As Plaintiff's lead case makes clear, her overly literal interpretation is disingenuous. The third *Pioneer* factor – the reason for the delay – is intended to analyze the reason the party erred in the first place, *i.e.,* the reason Plaintiff failed to adequately respond to the OSC. The factor is termed reason for "delay," because in *Pioneer*, the neglect at issue was the Plaintiff's "delay" in filing a proof of claim in a bankruptcy, which resulted in its missing the deadline for filing such claims. *Pioneer*, 507 U.S. at 384. The cases analyzing the factors, however, make clear that the factor is intended to provide a means by which the court can consider the reason for the party's neglect. *See Pincay*, 389 F.3d at 859; *In re Rebel Rents, Inc.*, 326 B.R. 791, 805-06 (C.D. Cal. 2005) (analyzing the reason that Plaintiff failed to comply with the filing deadline in considering the "reason for delay" *Pioneer* factor).

In *Pincay,* that is exactly what the Ninth Circuit considered during its discussion of this factor. The *Pincay* court explained that the appellee characterized "the reason for the delay as the failure of a 'carefully designed'

calendaring system operated by experienced paralegals that heretofore had worked flawlessly," while the appellant stressed "the degree of carelessness in the failure to read the applicable Rule." *Id.*, at 859.

Here, the only excuse that Plaintiff has offered for her neglect is her counsel's failure to carefully read both the OSC and her jurisdictional allegations to ensure that she corrected each of the defects identified in the OSC. As the Court held in *Pincay,* "failure to read an applicable rule is one of the least compelling excuses that can be offered." *Id.*, at 859. Although Plaintiff's counsel has repeatedly attempted to blame the district court for its error, a review of the OSC itself demonstrates the absurdity of her argument.

In her Rule 60(b) Motion, Plaintiff's lawyer claimed that, because the Court supposedly failed to check the proper box on the OSC (ER 86 ¶4), she "mistakenly did not read the Court's Order as identifying any defect in the jurisdictional allegations regarding Plaintiff …." ER 87 ¶5. However, the OSC, like the orders and rules at issue in *Speiser* and *Kyle*, is not confusing.

First, the district court checked the third box on the first page of the OSC, which clearly reads:

> Jurisdiction is asserted on the basis of diversity jurisdiction pursuant to 28 U.S.C. § 1332, but the pleadings set forth the <u>residence</u>, rather than the <u>citizenship</u>, of some of the parties. Diversity is based on <u>citizenship</u>.

ER 6 (emphasis added).

This statement in the OSC clearly and unmistakably distinguishes between "residence" and "citizenship" and reminds the lawyers of the fundamental rule of civil procedure that diversity jurisdiction "is based on citizenship." Paragraph no. 1 in Plaintiff's FAC mistakenly alleges residence instead of citizenship – *i.e.*, Plaintiff alleges she "is an individual who is a resident of Greenwich, Connecticut." ER 271. Thus, unless Plaintiff's lawyers did not read this third box checked by the Court, the only way it can be read and interpreted is as referring to paragraph no. 1 of Plaintiff's FAC. As argued above, "residence" was mentioned only in the allegation describing Plaintiff; the individual defendants were alleged to be "domiciled" (in Canada and California, respectively).

Second, the Court did <u>not</u> check the fourth box on page one of the OSC, which clearly reads:

> Jurisdiction is asserted on the basis of diversity jurisdiction pursuant to 28 U.S.C. § 1332, but the pleadings fail to allege the citizenship of some of the parties.

ER 90. Plaintiff's lawyer claims that <u>the Court erred</u> in not checking this box,[17] and that, because of the Court's failure to check this box, "I mistakenly did not read the Court's Order as identifying any defect in the jurisdictional allegations regarding the Plaintiff …." ER 87.

---

[17] Plaintiff's lawyer states that "[t]he Court's March 3, 2008 OSC did not separately check the box corresponding to the admonition that the First Amended Complaint was deficient for failure 'to allege the citizenship of some of the parties.'" ER 86.

When the plain language in the third and fourth boxes in the OSC is compared, it is obvious that each box relates to <u>different defects</u> in pleading diversity jurisdiction: the third box is checked when, <u>as here</u>, a plaintiff mistakenly alleges residence rather than citizenship, while the fourth box is checked when the plaintiff fails to make <u>any</u> allegation whatsoever regarding diversity, <u>which is not the case here</u>. Thus, these two boxes are not companions, as Plaintiff argues, but address diametrically opposed pleading defects.

Plaintiff's attempt to excuse her interpretation of the OSC by blaming the Court for not checking the fourth box is unavailing. The entire premise of Plaintiff's argument – *i.e.*, that the district court erred by failing to check <u>both</u> the third and fourth boxes in the OSC – is <u>wrong</u>. Accordingly, Plaintiff failed to establish that her lawyer's error was excusable as required under Rule 60(b)(1). *See Speiser*, 271 F.3d at 886-87; *Kyle*, 28 F.3d at 930-31; *In re Rebel Rents*, 326 B.R. at 806-06. In fact, if the error of Plaintiff's counsel is an excusable mistake, then it is hard to imagine what mistake would be inexcusable.

Unlike the parties who have obtained relief under Rule 60(b), Plaintiff did not fail to correct her defective allegations as a result of a delay in the mail, an inability to communicate with her counsel, or a "dramatic ambiguity" in the rules. *See e.g., Mendez v. Knowles*, 535 F.3d 973, 980 (9th Cir. 2008); *Briones v. Riviera Hotel & Casino,* 116 F.3d 379, 380 (9th Cir. 1997); *Pioneer*, 507 U.S. at 398.

Plaintiff's counsel simply failed to carefully read and comprehend the plain, unambiguous language of the Court's OSC. As a result, the third *Pioneer* factor weighs so heavily in favor of denying relief under Rule 60(b) that the district court's decision must be affirmed. *See Pincay*, 389 F.3d at 859 (finding that, because the lawyer's failure to read a clear rule was "one of the least compelling excuses that can be offered," if the district court had denied relief, the Court would have been "hard pressed to find any rationale requiring us to reverse").

Moreover, the fourth *Pioneer* factor (evidence of bad faith) also weighs in favor of denying relief because the record demonstrates that Plaintiff did not act in good faith in responding to the OSC. Rather than carefully reading the OSC and correcting her defective jurisdictional allegations by requesting an amendment *nunc pro tunc*, as Plaintiff did after the case was dismissed, Plaintiff attempted to take advantage of the district court's issuance of the OSC as a justification for her purported need to file a vastly expanded Second Amended Complaint.

In her Notice of Response to the OSC, Plaintiff advised the district court that she was responding to the OSC by filing a Motion for Leave to File a Second Amended Complaint. Plaintiff claimed that the proposed SAC corrected "the jurisdictional deficiencies" outlined in the OSC by including certain "proposed" allegations. ER 185. Plaintiff filed the Motion for Leave even though the deadline for amending pleadings had long passed, and defendants had indicated that they

would oppose her filing of the proposed SAC on various grounds. Remarkably, in her Motion for Leave, Plaintiff suggested that the new complaint was necessary "to add factual allegations regarding the principal place of business of corporate defendant Loring Ward, Inc." in response to the Court's March 3, 2008 Order to Show Cause. ER 333 (Docket No. 332).

It is clear from the record that Plaintiff's goal since she received defendants' Rule 11 letters was to breathe life into her moribund case. To do so, she had to convince the district court that she should be allowed to file a new complaint. Plaintiff's strategy is now obvious: she used the issuance of the OSC as a reason for claiming she needed to file a new complaint. Plaintiff, therefore, failed to respond to the OSC in good faith, and must now suffer the repercussions of her bad faith litigation decision. *See Latshaw*, 452 F.3d at 1101-02.

Given the weight of factors three (reason for delay) and four (bad faith), the fact that the first two *Pioneer* factors (prejudice to defendants and length of delay) may weigh in favor of Plaintiff is not sufficient to reverse.

### 4.    Plaintiff's Claimed Harm Resulting From Her Attorney's Error Was Irrelevant to District Court's Analysis

In repeatedly espousing the policies behind Section 1653 and Rule 60(b) and complaining throughout her opening brief of the injustice she will suffer if this Court affirms, Plaintiff ignores the well-established countervailing policies which strongly weigh against granting the relief she seeks.

Starting with *Pioneer*, the Supreme Court and the Ninth Circuit have

consistently held that the fact that an attorney's error has harmed or may cause

harm to the party seeking such relief is not sufficient alone to justify relief under

Rule 60(b)(1). *See Pioneer*, 507 U.S. at 396; *Latshaw*, 452 F.3d at 1100-1101;

*Casey*, 362 F.3d at 1260.

In *Pioneer*, although the Supreme Court upheld the lower court's decision

granting relief for an attorney's excusable neglect, the Court held that the lower

court erred in considering the harm that the neglect had caused the client. *Id.,* at

396. The Court stated, in pertinent part:

> The Court of Appeals suggested that it would be inappropriate to
> penalize respondents for the omissions of their attorney, reasoning
> that "the ultimate responsibility of filing the . . . proof[s] of clai[m]
> rested with [respondents'] counsel." The court also appeared to focus
> its analysis on whether respondents did all they reasonably could in
> policing the conduct of their attorney, rather than on whether their
> attorney, as respondent's agent, did all he reasonably could to comply
> with the court-ordered bar date.  In this, the court erred.

*Id*. at 396 (emphasis added) (internal citations omitted).

The Court explained that "clients must be held accountable for the acts and

omissions of their attorneys," and "may be made to suffer" the consequences of

dismissal of a lawsuit based on the attorney's errors. *Id*.  The Court based its

reasoning on the fact that parties voluntarily choose their attorneys as their

representatives and cannot "avoid the consequences of the acts or omissions of this

freely selected agent." *Id*., at 397.

Ninth Circuit authority is in accord with the Supreme Court's decision. In *Latshaw*, the Ninth Circuit affirmed the district court's denial of plaintiff's motion for relief from judgment on grounds of mistake based on erroneous legal advice given by plaintiff's attorney. 452 F.3d at 1101-02. In affirming the district court's decision, the Ninth Circuit held that an attorney's inexcusable error does not provide the basis for relief regardless of whether the party seeking such relief suffers harm as a result of the inexcusable error:

> [O]ut-and-out lawyer blunders – the type of action or inaction that leads to successful malpractice suits by the injured client – do not qualify as a "mistake" or "excusable neglect" within the meaning of Rule 60(b)(1)
>
>          *     *     *
>
> [P]arties should be bound by and accountable for the deliberate actions of themselves and their chosen counsel. This includes not only an innocent, albeit careless or negligent, attorney mistake, but also intentional attorney misconduct. Such mistakes are more appropriately addressed through malpractice claims.

*Id.* at 1101 (citations and internal quotations omitted).

Given the foregoing authority, Plaintiff's claim that the denial of her Motion would force Plaintiff "either to appeal the Order … or abandon her claims" is wholly irrelevant and should not have affected the district court's analysis under Rule 60(b)(1). Plaintiff chose her lawyers to act as her representative in this action and is bound by and accountable for her lawyers' actions. The fact that her

lawyers' actions have resulted in the dismissal of her case does not provide Plaintiff with a remedy under Rule 60.

Moreover, Plaintiff's claimed harm is disingenuous for two reasons. First, as discussed in Section VIII.B.3., *infra*, Plaintiff's claims are without merit because the issues underlying the claims have already been adjudicated against Plaintiff in the state court dissolution action. Second, her own conduct has contradicted her claim. Despite Plaintiff's argument that denial of her Rule 60(b) Motion would force her to either appeal or "abandon her claims, because they would be time-barred" (ER 77), in July 2008, while her appeal was pending, Plaintiff re-filed her claims in Los Angeles County Superior Court. RJN, Ex. A. When defendant Weinberg removed the complaint to district court and the district court assigned the case back to Judge Gutierrez, Plaintiff promptly dismissed her complaint, without explanation. RJN, Ex. B.

In sum, the judgment should be affirmed. By failing to take advantage of the opportunity to amend provided by the district court, Plaintiff lost her ability to amend pursuant to Section 1653. Moreover, Plaintiff has failed to establish that the district court abused its discretion in denying her Rule 60(b) Motion.

## VIII.  ARGUMENT (CROSS-APPEAL)

### A.  Standard Of Review

An order denying summary judgment is reviewed *de novo*.  *Ventura Packers, Inc. v. F/V Jeanine Kathleen*, 305 F.3d 913, 916 (9th Cir. 2002).  The reviewing court must determine, "viewing the evidence in the light most favorable to the non-moving party, whether there are any genuine issues of material fact and whether the district court applied the relevant substantive law."  *Id.*

### B.  The District Court Erred in Denying Cross-Appellant's Summary Judgment Motion

Defendants are entitled to summary judgment in their favor on Plaintiff's complaint because Plaintiff cannot establish the essential elements of her claims.[18] Specifically, Plaintiff cannot establish that she reasonably and justifiably relied upon Defendants' alleged non-disclosures or that she was damaged as a result of Defendants' alleged conduct because these issues were already adjudicated against her in the prior State Court Action.  The doctrine of collateral estoppel precludes Plaintiff from re-litigating those issues here.

---

[18] As explained in note 2, *supra*, to the extent this Court reverses the order denying the Summary Judgment Motion, the resulting judgment should apply with equal force to all named defendants.

### 1.   Collateral Estoppel Under California Law[19]

In California, the doctrine of collateral estoppel, also known as issue

preclusion, prevents relitigation of issues argued and decided in prior proceedings.

*Castillo v. City of Los Angeles*, 92 Cal.App.4th 477, 481, 111 Cal.Rptr.2d 870

(2001).  The threshold requirements for issue preclusion are:

> (1) the issue presented is identical to that decided in the former proceeding;
>
> (2) the issue was actually litigated in the former proceeding;[20]
>
> (3) the issue was necessarily decided in the former proceeding;[21]
>
> (4) the decision in the former proceeding is final and on the merits; and
>
> (5) preclusion is sought <u>against</u> a person who was a party or in privity with a party to the former proceeding.

*Id.*

---

[19] In determining the preclusive effect of matters adjudicated in a prior proceeding, the court must "refer to the preclusion law of the State in which the judgment was rendered" – *i.e.*, California law.  *Marrese v. Am. Academy of Orthopaedic Surgeons*, 470 U.S. 373, 380, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985).

[20] "An issue is actually litigated when it is *properly raised*, by the pleadings or otherwise, and is submitted for determination and is *determined* …." *Castillo*, 92 Cal.App.4th at 482 (citations and internal quotations omitted; emphasis in original).

[21] An issue is necessarily decided if it "was not entirely unnecessary to the judgment in the prior proceeding" *Lucido v. Superior Court,* 51 Cal.3d 335, 342, 272 Cal.Rptr. 767; 795 P.2d 1223 (1990), *cert. denied*, 500 U.S. 920, 111 S.Ct. 2021, 114 L.Ed.2d 107 (1991) .

The fact that a moving defendant was not a party to the prior proceeding is irrelevant as "a stranger to the prior judgment may assert defensive issue preclusion." *Campbell v. Scripps Bank*, 78 Cal.App.4th 1328, 1334, 93 Cal.Rptr.2d 635 (2000). *See also Bernhard v. Bank of America*, 19 Cal.2d 807, 813, 122 P.2d 892 (1942).

The rule of issue preclusion is based on "the sound public policy of limiting litigation by preventing a party who has had one fair trial on an issue from again drawing it into controversy." *In re Marriage of Buckley*, 133 Cal.App.3d 927, 935, 184 Cal.Rptr. 290 (1982).

Under the doctrine of issue preclusion, a prior judgment is conclusive not only as to the matters on its face, but also as to those matters that were necessary to or implicit in a determination of the issues. *Wodicka v. Wodicka*, 17 Cal.3d 181, 188, 130 Cal.Rptr. 515 (1976). Thus, where two lawsuits arise out of the same alleged facts, even if the causes of action are different, the court's prior determination of an issue in the first lawsuit is conclusive in the second lawsuit "with respect to every matter which might have been urged to sustain or defeat [the issue's] determination." *Frommhagen v. Board of Supervisors*, 197 Cal.App.3d 1292, 1301, 243 Cal.Rptr. 390 (1987).

Here, the Santa Barbara Superior Court's prior determinations on Mr. Wolf's motion to enforce the Marital Settlement Agreement and Plaintiff's motion

to set aside the judgment preclude Plaintiff from establishing her claims against Defendants in this case. As explained below, Plaintiff's claims fail as a matter of law because she cannot prove the essential elements of concealment, reliance or damages.

### 2. The Relevant Issues in This Action Are "Identical" to Those That Were Actually Litigated in the State Court Action

The district court denied Defendants' Summary Judgment Motion based on the conclusion that the only issues decided in the State Court Action "related to [Mr. Wolf's] conduct, not to that of Defendants." SER 1. While it is true that the State Court did not make any rulings regarding Defendants' conduct or duties, it did make express rulings regarding Plaintiff's conduct and alleged damages. It is those rulings that prevent Plaintiff from prevailing here because her claims turn on issues identical to those adjudicated against her in the State Court Action.

The "identical issues" element of collateral estoppel "addresses whether 'identical factual allegations' are at stake in the two proceedings, not whether the ultimate issues or dispositions are the same." *Lucido*, 51 Cal.3d at 342.

As discussed above, Plaintiff bases her claims on three discrete issues (*see supra* p. 17).[22] The identity of those issues with the issues in the State Court

---

[22] Given that Plaintiff expressly abandoned one of the three issues (Issue No. 1) in response to Defendants' Rule 11 letters (SER 116B), the Court should limit Plaintiff's claims to those remaining issues (Issue Nos. 2 and 3) in evaluating whether summary judgment is appropriate. However, even if the Court elects to

Action is plainly demonstrated by the full record in the State Court Action,[23]

including the following excerpts from Plaintiff's response to Mr. Wolf's motion to

enforce the MSA:

> In late 2002, Assante provided to the parties a financial analysis that would serve as a basis for settlement negotiations. . . . Certain parts of that analysis indicated that they were prepared by the accounting firm of Cohen, Miskei & Mowrey, LLP ("CMM"). [Mr. Wolf] concealed that he, not Assante (which represented that it was acting as an impartial mediator) retained CMM. In fact, [Christine Wolf] was not informed that CMM was a partisan on [Mr. Wolf's] payroll until [Mr. Wolf] admitted retaining the firm in declarations filed with this motion. . . . [Christine Wolf] was encouraged by this non-disclosure to believe that Assante was representing both parties fairly and that the financial report was fair and unbiased. Certainly, if [Mr. Wolf] had disclosed that the report was not independent, she would have engaged an expert to analyze the report and to prepare a counter-report if appropriate (SER 1281, 236 at ¶ 10) (emphasis in original).

> Petitioner failed to disclose the origin of the financial analysis that formed the basis of the MSA (SER 1289, 236 at ¶ 10).

> Petitioner failed to disclose properly the value of his interest in his television programs, and nothing disclosed would have enabled respondent to ascertain that the value of the programs was $1.6 billion. . . . This non-disclosure and improper disclosure justified denying the Motion to Enforce Marital Settlement Agreement.

SER 1290, 236 at ¶ 10.[24]

---

treat Issue No. 1 as still providing a basis for Plaintiff's claims, summary judgment should still have been granted. Accordingly, Defendants will discuss all three issues in their analysis.

[23] "The entire record of the first suit may be examined to determine if an issue was decided by the judgment." *Frommhagen*, 197 Cal.App.3d at 1301 n.3. Defendants filed four volumes of exhibits to the request to take judicial notice below, consisting of the relevant pleadings and orders from the State Court.

After considering Plaintiff's arguments, including those quoted above – not once but twice (in ruling on Mr. Wolf's motion to enforce and Plaintiff's motion to set aside the judgment) – the judge in the State Court Action rejected Plaintiff's claims, finding that nothing had been concealed from her and that she suffered no cognizable damage. SER 350-52, 236 at ¶ 15, SER 493-498, 237 at ¶¶ 23-24. In short, the issues of whether certain specific information was concealed from Plaintiff and whether she was harmed thereby were actually litigated and necessarily decided in the State Court Action. Thus, all of the requisite elements for issue preclusion exist[25] and Plaintiff's claims fail.

---

[24] Plaintiff's declaration filed in support of her opposition to Mr. Wolf's motion to enforce the MSA further demonstrates the identity of issues. Plaintiff declared that:

> When I first retained William Beslow in or around October 2002, it was my understanding that Mr. Wolf's and my business managers, [Assante] had undertaken to prepare an analysis of Mr. Wolf's and my financial situation. This was to be the basis upon which Assante would submit a settlement proposal for both Mr. Wolf's and my consideration. <u>I did not realize, and was not told, that Mr. Wolf had retained the accounting firm [CMM] that apparently provided parts of the analysis</u>. Certainly had I known that fact, I would have questioned the report and even, if necessary, retained an expert to analyze the report. Assante had previously acted both on my behalf and [Mr. Wolf's] behalf, so I presumed that it would treat the two of us fairly. Given this, I relied upon the integrity of the financial report submitted to me by Assante. SER 1294 at ¶ 3 (emphasis added), 236 at ¶ 10.

[25] There is no dispute that the fourth and fifth elements necessary for application of collateral estoppel, a "final judgment" and Plaintiff's status as a party in the former proceeding, are met here. Plaintiff was quite obviously a party

3. **Because Plaintiff Is Precluded From Re-Litigating the Above Issues, She Cannot Establish the Essential Elements of Her Claims**

   a. **Plaintiff Is Precluded From Proving Reliance**

To prevail on her state law claims for fraud, negligent misrepresentation and breach of fiduciary duty/constructive fraud, Plaintiff must establish that she justifiably relied on Defendants' alleged misrepresentations and/or omissions and that she was damaged thereby. *Chicago Title Insurance Co. v. Superior Court*, 174 Cal.App.3d 1142, 1151, 220 Cal.Rptr. 507 (1985). Plaintiff cannot prove these essential elements because the Santa Barbara Superior Court already ruled that CMM's and Mr. Kibre's involvement in preparing and/or reviewing the analyses used in the negotiation of the MSA (Issue Nos. 2 and 3) were not concealed from Plaintiff and that Plaintiff did not suffer any damages as a result of their involvement because the information provided to her was correct:

> There seems to be no real argument with the fact that the accounting Ms. Wolf and her counsel complain of was either inaccurate or incorrect. The court recognizes that <u>they complain the information they were given was correct, but from an unexpected source. This does not constitute concealment or duress.</u>

SER 351-52 (emphasis added), 236 at ¶ 15.

---

to the State Court Action and the judgment in that case is final and not open to direct attack by appeal. SER 654-69, 238 at ¶ 31.

The Superior Court further found that Plaintiff knew that Mr. Wolf would receive substantial future revenues from the *Law & Order* series (Issue No. 1) and that she did not suffer any damages as a result of this fact:

> [Plaintiff] knew about the issues of goodwill and future profits. Both of these issues are well know [sic] to divorce lawyers and are subject to considerable discussion in every dissolution such as this. Neither is readily or easily determinable. Both are elusive. Every dissolution lawyer is aware of the problems dealing with such concepts. <u>She cannot claim either fraud or concealment under these facts</u>. . . . Here there was no failure to disclose an asset. . . . Dissolution lawyers know the requirements of having to make reasonable inquiry and the reasons for the rule.

SER 351 (emphasis added), 236 at ¶ 15.

Given these findings, Plaintiff cannot establish her claims for breach of fiduciary duty, fraud and negligent misrepresentation in this case. Even assuming *arguendo* that Defendants failed to disclose CMM's or Kibre's involvement or Mr. Wolf's alleged entitlement to future revenues, it has already been adjudicated that <u>Plaintiff was aware of the matters she claims were concealed</u>. Given this knowledge, and the fact that Plaintiff was represented by competent and knowledgeable counsel, Plaintiff cannot have reasonably or justifiably relied on Defendants' alleged non-disclosures. *Guido v. Koopman*, 1 Cal.App.4th 837, 843-44, 2 Cal.Rptr.2d 437 (1991) (holding that where a person's knowledge or experience makes it unreasonable for them to have relied on the alleged misrepresentation or omission, justifiable reliance may be determined as a matter

of law against the party claiming fraud); *Hughes Aircraft Co. v. Superior Court*, 44 Cal.App.4th 1790, 1793, 52 Cal.Rptr.2d 514 (1996) (no fraudulent concealment of employees' injuries by employer where employees already knew of injuries).

### b. Plaintiff Is Precluded From Attempting to Prove Damages From the Alleged Concealment

Plaintiff also cannot establish that she was damaged by Defendants' alleged non-disclosures. With respect to each of her claims, Plaintiff alleges that, as a result of Defendants' concealment, she suffered damages by signing an MSA "that omitted material financial terms" and was "contrary to her financial interest." ER 285, 287, 288, 289. However, the Superior Court expressly found that there was nothing inaccurate or incorrect in the documents provided to Plaintiff, and Plaintiff and her experienced lawyer were well aware of the issues of goodwill and future profits. SER 351-52, 236 at ¶ 15. As a result of that finding, Plaintiff cannot re-litigate the issues of whether she was damaged by Defendants' alleged failure to disclose the value of the goodwill of *Law & Order* or CMM's and Mr. Kibre's role in the negotiations. The Superior Court has already adjudicated the issue.

For purposes of Defendants' motion, it was irrelevant whether Defendants failed to disclose any information to Plaintiff. If Plaintiff was aware of the facts which she claims (both in the State Court Action and this action) were concealed, from whatever source, she cannot have been harmed by Defendants' alleged non-disclosure. *Hughes Aircraft Co.*, 44 Cal.App.4th at 1793. For these reasons,

Plaintiff cannot establish the essential elements of her claims and summary judgment should be entered in favor of Defendants. *E.g., Campbell*, 78 Cal.App.4th at 1334-1335 (affirming grant of summary judgment based on collateral estoppel and the plaintiff's resulting inability to prove damages); *Tushinsky v. Arnold*, 195 Cal.App.3d 666, 671, 241 Cal.Rptr. 103 (1987) (affirming trial court order sustaining demurrer without leave to amend based on prior ruling in malicious prosecution which prevented plaintiff from proving that the defendant's alleged conduct proximately caused harm).

## IX.   **CONCLUSION**

For each of the foregoing reasons, Defendants respectfully request that this Court affirm the district court's dismissal of the action and denial of Plaintiff's Rule 60(b) Motion.  However, in the event that this Court is inclined to reverse the district court's orders, Cross-Appellants Loring Ward, Inc. and Robert Philpott seek dismissal of the action against all defendants with prejudice based on the district court's error in denying their Summary Judgment Motion.

DATED: February 9, 2009          KINSELLA WEITZMAN ISER KUMP &
                                 ALDISERT LLP


                                 By:   /s/ Dale F. Kinsella
                                       _____
                                       Dale F. Kinsella
                                       Attorneys for Appellee/Cross-Appellant
                                       Loring Ward, Inc.

DATED: February 9, 2009      BUCHALTER NEMER


By:  /s/ Michael L. Meeks
      Michael L. Meeks
      Attorneys for Appellee/Cross-Appellant
      Robert Philpott



DATED: February 9, 2009      GLASER, WEIL, FINK, JACOBS &
      SHAPIRO, LLP


By:  /s/ Patricia L. Glaser
      Patricia L. Glaser
      Attorneys for Appellee Martin Weinberg

## <u>CERTIFICATE OF COMPLIANCE</u>

This is to certify that, pursuant to Fed. R. App. P. 28.1(e)(2)(B)(i) and

32(a)(7)(C) and Ninth Circuit Rule 32-1, the attached Appellees' Principal and

Response Brief is proportionately spaced, has a typeface of 14 points or more and

contains 17,382 words, excluding the parts of the brief exempted by Fed. R. App.

P. 32(a)(7)(B)(iii).


DATED: February 9, 2009      KINSELLA WEITZMAN ISER KUMP &
                                         ALDISERT LLP


                                 By:  /s/ Kristen L. Spanier
                                         Kristen L. Spanier
                                         Attorneys for Appellee/Cross-Appellant
                                         Loring Ward, Inc.

## <u>STATEMENT OF RELATED CASE</u>

Pursuant to Ninth Circuit Rule 28-2.6, Appellees/Cross-Appellants Loring Ward, Inc. and Robert Philpott and Appellee Martin Weinberg are not aware of any related cases pending in this Circuit.

DATED: February 9, 2009      KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP

By: /s/ Dale F. Kinsella
     Dale F. Kinsella
     Attorneys for Appellee/Cross-Appellant
     Loring Ward, Inc.

DATED: February 9, 2009      BUCHALTER NEMER

By: /s/ Michael L. Meeks
     Michael L. Meeks
     Attorneys for Appellee/Cross-Appellant
     Robert Philpott

DATED: February 9, 2009      GLASER, WEIL, FINK, JACOBS & SHAPIRO, LLP

By: /s/ Patricia L. Glaser
     Patricia L. Glaser
     Attorneys for Appellee Martin Weinberg